TONY D. AVERY, EMPLOYEE, PLAINTIFF v. PHELPS CHEVROLET, SELF-INSURED, EMPLOYER AND SEDGWICK CMS, INC., SERVICING AGENT, DEFENDANTS

No. COA05-562

(Filed 7 March 2006)

## 1. Workers' Compensation— expert testimony—causation

The Industrial Commission did not err in a workers' compensation case by concluding that the medical evidence established a causal connection between plaintiff's shoulder injury on 3 January 1996 and his cervical spine condition based on a doctor's testimony stating he believed it was likely, because: (1) our Supreme Court has found expert testimony that an accident likely caused a subsequent injury to be competent evidence to support a finding of causation; (2) although other medical experts testified plaintiff's injury could or might have been the result of his workplace accident, where the evidence is conflicting, the Commission's findings of fact are conclusive on appeal; and (3) the evidence tending to support plaintiff's claim is viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence.

## 2. Workers' Compensation— expert testimony—findings of fact—consideration—credibility—relevancy

The Industrial Commission did not err in a workers' compensation case by allegedly failing to make any findings of fact with regard to the consideration, credibility, and relevancy of the testimony of a board certified orthopedist, because: (1) the exten-

sive findings of fact regarding the orthopedist's evaluations of plaintiff show the Commission did consider and evaluate the evidence presented by the orthopedist; and (2) as long as it is clear from the record that the Commission did consider conflicting expert testimony, the Court of Appeals will not question its acceptance of one theory over another.

**3. Workers' Compensation— findings of fact—failure to inform initial treating physicians of injury**

The Industrial Commission did not err in a workers' compensation case by failing to make any findings of fact with regard to the consideration, credibility and relevancy of plaintiff's failure to inform his initial treating physicians of his alleged cervical spine injury, because: (1) although plaintiff failed to complain of neck pain between 3 January 1996 and 20 March 1996, plaintiff did make continuous complaints of severe and persistent shoulder pain; (2) two doctors testified that pain medication and the rotator cuff tear in plaintiff's shoulder might have masked the symptoms of plaintiff's neck injury during that period of time, and another doctor testified that shoulder and neck symptoms overlap quite a bit; (3) all of plaintiff's treating physicians testified plaintiff's neck pain could have been or was likely caused by his 3 January 1996 accident; and (4) the Commission did consider plaintiff's failure to complain specifically of neck pain between January and March 1996, yet still determined the January accident likely caused plaintiff's neck injury.

Appeal by defendants from decision entered 17 February 2005 by the North Carolina Industrial Commission. Heard in the Court of Appeals 23 January 2006.

*Edwards & Ricci, P.A., by Brian M. Ricci, for plaintiff-appellee.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by John A. Tomei and Kathryn Deiter-Maradei, for defendant-appellants.*

MARTIN, Chief Judge.

Defendants appeal from an order of the North Carolina Industrial Commission ("Commission") awarding plaintiff (1) temporary total disability for time missed from work, (2) costs for medical treatment related to his injury, and (3) attorneys' fees. For the reasons which follow, we affirm.

AVERY v. PHELPS CHEVROLET

[176 N.C. App. 347 (2006)]

The evidence before the Commission tended to show that plaintiff, who had a high school education, began working as a mechanic for defendant Phelps Chevrolet ("Phelps") in 1987. On 3 January 1996, plaintiff fell backwards while stepping off of a stool, striking his back and right shoulder on a concrete block. Plaintiff felt "major pain" in his neck and shoulder as soon as he fell, and he could not move his shoulder. He received immediate medical attention at "Med Center One" where x-rays were taken and his shoulder was put in a sling. Plaintiff continued to return to Med Center One for six months where he received physical therapy and a steroid shot in his right shoulder. When he failed to improve, he was recommended to Dr. Steven L. Wooten, a board-certified orthopaedist.

Dr. Wooten first saw plaintiff in March of 1996. At that time, Dr. Wooten stated plaintiff "had good motion in his shoulder. His muscle strength was good, but due to his persistent pain I [recommended] an MRI scan of his shoulder." Plaintiff scheduled an appointment for the MRI, but he was too large to fit into the MRI scan. Instead, Dr. Wooten obtained an arthrogram to determine if plaintiff had a tear of his rotator cuff. The arthrogram indicated a large tear of the rotator cuff, which Dr. Wooten recommended plaintiff undergo surgery to repair. In April 1996, the injury to plaintiff's right shoulder was accepted as compensable, and he was paid temporary total disability beginning 30 April 1996.

Plaintiff's rotator cuff surgery took place on 23 April 1996. After surgery, plaintiff testified that when he turned his neck, he felt "like it was pulling the shoulder in two." Dr. Wooten continued to send plaintiff to therapy, and he recommended plaintiff not use his right hand and keep his right arm in a sling while at work. When Dr. Wooten saw plaintiff on 24 May 1996, plaintiff continued to have "tightness over his neck in that same area, but it was improving." A month later, Dr. Wooten found plaintiff's neurologic exam to be normal. However, plaintiff continued to have pain in the right side of his neck and down his arm into his hand. Dr. Wooten believed the pain was a result of either (1) the nerve block administered to plaintiff during surgery, (2) a herniated cervical disk in plaintiff's neck, or (3) continued pain from the rotator cuff tear.

A subsequent arthrogram indicated plaintiff had a "persistent or recurrent rotator cuff tear." However, Dr. Wooten stated that "[m]ost people with a rotator cuff tear won't have neck pain or pain below the elbow," leading him to believe that an additional cause of plaintiff's pain might be a herniated cervical disk. Dr. Wooten

first considered the possibility that a herniated disk was the cause of plaintiff's pain in August of 1996, seven months after plaintiff's accident. Although he stated that symptoms of a cervical disk herniation generally appear sooner than seven months after an injury takes place, he believed it was "possible" the injury caused the cervical disk herniation.

Dr. Wooten recommended plaintiff see Dr. William J. Mallon, an expert in the field of orthopedic surgeries with a sub-specialty in shoulder and elbow surgery. Dr. Mallon treated plaintiff between 19 June 1997 and 12 June 2001 and performed two surgeries on plaintiff's shoulder. The first surgery was to repair his rotator cuff, after which plaintiff improved briefly. However, because plaintiff continued to have pain, Dr. Mallon performed a second surgery on 15 January 1999. During this surgery, Dr. Mallon removed a portion of plaintiff's distal clavicle, or collar bone, at the joint where the collar bone meets the shoulder blade. Plaintiff again improved briefly then later regressed. In May of 1999, plaintiff told Dr. Mallon he was "50 percent better than before . . . but not normal yet and [his injury] continued to hurt him a fair amount."

On 26 May 1999, plaintiff was "pulling on an air conditioning part" at work when he lost his grip and "developed a sharp shooting pain in his shoulder." Dr. Mallon indicated he thought plaintiff had "intrinsic tendonopathy," meaning his tendon was intact but weaker than normal, and some activities that were not previously painful now caused pain in the tendon. Dr. Mallon restricted plaintiff from raising his right arm above shoulder level, lifting more than ten pounds, and standing on ladders or unrestricted heights. When Dr. Mallon saw plaintiff on 6 November 2000, plaintiff was complaining of pain radiating up into his neck muscles. At that point, Dr. Mallon felt the best course of action for plaintiff was to go to a pain clinic. On 12 June 2001, Dr. Mallon referred plaintiff to Dr. Lynn Johnson at the Greenville Pain Clinic.

Dr. Johnson practices in pain management and is board-certified in anesthesiology and pain medicine. He first saw plaintiff on 1 October 2001, at which time plaintiff complained of neck, shoulder, and arm pain in his right side. Dr. Johnson observed the following symptoms in plaintiff: (1) limited right shoulder range of motion; (2) pain and tenderness of the right shoulder; (3) nerve root irritation of the wrist and elbow; (4) tenderness in the neck; and (5) tenderness and decreased sensitivity to light touch in his right arm. Dr. Johnson recommended plaintiff have an EMG, which is a nerve conduction study

of the arm, and a cervical MRI scan of his neck. Having lost a significant amount of weight since 1996, plaintiff was able to obtain the MRI scan. The MRI indicated multilevel disk protrusions between the C3 and C7 disks, a potential herniation at C7-T1, and a herniation at C5-6. The EMG revealed some problem with the nerves in plaintiff's right wrist and arm, but it did not indicate a nerve root irritation. Despite this, Dr. Johnson believed there was nerve root irritation, stating that EMGs are "relatively insensitive to the wide spectrum of nerve problems" and do not pick up small or sensory nerve problems readily. Dr. Johnson prescribed pain medication and performed a nerve root block of the C6 nerve on plaintiff's right side, but when plaintiff did not improve, he referred him to Dr. Kurt Voos, an expert in the field of orthopaedic surgery.

Dr. Voos first saw plaintiff on 11 March 2002. At that time, plaintiff complained of "[s]hooting pain into the right shoulder, forearm, thumb, index finger, along with numbness and tingling." Plaintiff described his pain as an eight on a scale of one to ten. Dr. Voos reviewed plaintiff's MRI, which revealed a herniated disk at C5-6 and C6-7. He recommended plaintiff receive a cervical epidural steroid injection, which Dr. Johnson's associate performed on 17 June 2002. When asked whether he believed the disk herniation could or might have been caused by the 3 January 1996 injury, he replied, "I think it could have been, yes." Upon reviewing Dr. Wooten's records indicating plaintiff had symptoms of disk herniation in August of 1996, Dr. Voos stated that the herniation was "*likely* to be related to the injury." (Emphasis added). Dr. Voos further stated it was "very likely" plaintiff's pain from the rotator cuff tear had initially masked the symptoms he would have had from a herniated disk in his neck.

A hearing before a deputy commissioner was held to determine if plaintiff's cervical spine problems were related to his compensable injury of 3 January 1996. The majority of the medical testimony indicated plaintiff "could or might" have a cervical spine condition as a result of his 3 January 1996 fall, which the deputy commissioner found to be insufficient to establish a causal relationship between the incident and his current condition. He made, *inter alia*, the following relevant findings:

14. Dr. Wooten, an orthopedic surgeon, was certainly in the best position to given [sic] an opinion regarding the genesis of plaintiff's cervical spine problem insofar as it might relate to the injury because he treated plaintiff during the year following the injury and during the time the first possibly related symptoms mani-

fested themselves. He testified in essence that a causal relationship was possible but was not likely and that he would have expected radicular symptoms to have developed sooner than seven months after the injury. In over twenty-two years as a Deputy Commissioner, the undersigned cannot remember another case where a treating physician related a herniated disc to an injury where there was such a long delay in the development of symptoms. Consequently, the cervical spine condition with which plaintiff was diagnosed in approximately March 2002 was not proven by the greater weight of the credible evidence to have been a proximate result of the January 3, 1996 injury by accident.

15. In addition, the May 26, 1999 injury by accident was not proven to have caused or aggravated the cervical spine condition at issue.

The deputy commissioner therefore concluded as a matter of law that plaintiff was "not entitled to benefits under the Workers' Compensation Act for his cervical spine condition."

The full Industrial Commission reversed the holding of the deputy commissioner, finding "Plaintiff's cervical disc problems are causally related to his January 3, 1996 injury by accident." In its Finding of Fact No. 22, the Commission stated:

22. When asked whether Plaintiff's cervical disc herniations could or might have been caused by the January 3, 1996 injury, Dr. Voos replied, "I think it could have been, yes." Based on Plaintiff's medical records, Dr. Voos opined that it was *likely* that Plaintiff's cervical conditions are related to his January 3, 1996 injury.

(Emphasis added). The Commission then made the following conclusions of law:

1. On or about January 3, 1996, Plaintiff sustained a compensable injury by accident to his right shoulder. On or about May 26, 1999, Plaintiff sustained a compensable injury by accident and/or aggravation of a pre-existing condition to his arm and shoulder as set forth in the Form 18 filed by Plaintiff on August 31, 1999 and the Form 60 filed by Defendant-Employers on June 27, 2001. N.C. Gen. Stat. § 97-2(6).

2. Plaintiff's cervical spine herniations are causally related to his compensable injury by accident of January 3, 1996 and May 26, 1999 aggravation of his injury.

3. Defendants are obligated to pay Plaintiff's medical expenses resulting from his compensable injury by accident, including treatment for his neck injuries, for so long as such treatment may be reasonably required to effect a cure, provide relief, or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.

4. Plaintiff is entitled to be rated for any permanent partial disability he may have sustained to his cervical spine.

The Commission awarded plaintiff (1) "temporary total disability compensation at the rate of $465.40 per week for any days missed from work as a result of his cervical disc herniations and related cervical conditions," (2) "medical expenses incurred or to be incurred by Plaintiff as a result of his compensable cervical disc condition so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen Plaintiff's period of disability," and (3) attorneys' fees "in the amount of 25% of the compensation due Plaintiff pursuant to this award." Defendants appeal.

---

On appeal, defendants argue the opinion and award of the Commission should be reversed for the following reasons: (1) the medical evidence is so speculative so as to be insufficient to establish a causal connection between plaintiff's right shoulder injury on 3 January 1996 and his alleged cervical spine injuries or condition; (2) the Commission failed to make any findings of fact with regard to the consideration, credibility and relevancy of the testimony of the treating physician Dr. Mallon; and (3) the Commission failed to make any findings of fact with regard to the consideration, credibility and relevancy of the testimony regarding plaintiff's failure to inform his treating physicians of his alleged cervical spine injury.

"The standard of review for an appeal from an opinion and award of the Industrial Commission is limited to a determination of (1) whether the Commission's findings of fact are supported by any competent evidence in the record; and (2) whether the Commission's findings justify its conclusions of law." *Goff v. Foster Forbes Glass Div.*, 140 N.C. App. 130, 132-33, 535 S.E.2d 602, 604 (2000). If there is competent evidence to support the findings of fact, they are conclusive on appeal even though there is evidence to support contrary findings. *Hedrick v. PPG Industries*, 126 N.C. App. 354, 357, 484 S.E.2d 853,

856, *disc. review denied*, 346 N.C. 546, 488 S.E.2d 801 (1997). The Commission's conclusions of law are reviewed *de novo. McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004).

[1] Defendants first argue the medical evidence is so speculative it is insufficient to establish a causal relationship between plaintiff's injury on 3 January 1996 and his cervical spine condition. Our Supreme Court has stated that "expert opinion testimony . . . based merely upon speculation and conjecture . . . is not sufficiently reliable to qualify as competent evidence on issues of medical causation." *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 230, 538 S.E.2d 912, 915 (2000). Expert testimony indicating only that plaintiff's condition "could or might" have been related to the compensable injury is not competent evidence to show causation. *Edmonds v. Fresenius Med. Care*, 165 N.C. App. 811, 600 S.E.2d 501 (2004) (Steelman, J., dissenting), *rev'd per curiam for reasons stated in the dissent*, 359 N.C. 313, 608 S.E.2d 755 (2005). However, where expert testimony finds it "likely" that plaintiff's injury was related to the workplace accident, our Supreme Court has determined that to be competent evidence to establish a causal connection between the accident and the injury. *Alexander v. Wal-Mart Stores, Inc.*, 166 N.C. App. 563, 603 S.E.2d 552 (2004) (Hudson, J., dissenting), *rev'd per curiam for reasons stated in the dissent*, 359 N.C. 403, 610 S.E.2d 374 (2005). Pursuant to our Supreme Court's adoptions of the dissents in *Edmonds* and *Alexander*, this Court recently stated:

> it appears that our Supreme Court has created a spectrum by which to determine whether expert testimony is sufficient to establish causation in worker's compensation cases. Expert testimony that a work-related injury "could" or "might" have caused further injury is insufficient to prove causation when other evidence shows the testimony to be "a guess or mere speculation." However, when expert testimony establishes that a work-related injury "likely" caused further injury, competent evidence exists to support a finding of causation.

*Cannon v. Goodyear Tire & Rubber Co.*, 171 N.C. App. 254, 264, 614 S.E.2d 440, 446-47, *disc. review denied*, 360 N.C. 61, 621 S.E.2d 177 (2005) (citations omitted).

In the present case, Dr. Kurt Voos stated in his deposition he believed it was "likely" plaintiff's cervical disc herniation was related to plaintiff's 3 January 1996 workplace accident. Although other medical experts testified plaintiff's injury "could" or "might" have been

the result of his workplace accident, where the evidence is conflicting, the Commission's findings of fact are conclusive on appeal. *Adams v. AVX Corp.*, 349 N.C. 676, 682, 509 S.E.2d 411, 414 (1998). Furthermore, "[t]he evidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence." *Id.* at 681, 509 S.E.2d at 414. Because our standard of review is to determine whether there is "any competent evidence in the record" to support the Commission's findings, and because our Supreme Court has found expert testimony that an accident "likely" caused a subsequent injury to be competent evidence to support a finding of causation, we must overrule defendants' first argument that the medical evidence was insufficient to establish a causal connection between plaintiff's workplace accident and his cervical spine injury.

[2] Defendants' second argument is that the Commission's opinion and award should be reversed because it failed to make any findings of fact with regard to the consideration, credibility and relevancy of the testimony of Dr. Mallon. Defendants cite *Gutierrez v. GDX Automotive*, 169 N.C. App. 173, 176, 609 S.E.2d 445, 448, *disc. review denied*, 359 N.C. 851, 619 S.E.2d 408 (2005), which states the Commission "must consider and evaluate all the evidence before it is rejected," and "it is reversible error for the Commission to fail to consider the testimony or records of a treating physician." *Gutierrez*, 169 N.C. App. at 176, 609 S.E.2d at 448 (citations omitted).

The Commission made the following findings of fact regarding Dr. Mallon's deposition testimony:

11. Dr. Mallon is board-certified in orthopedics and has a subspecialty in shoulder and elbow surgery. He treated plaintiff from September 19, 1997 to June 12, 2001. On September 19, 1997, Dr. Mallon indicated in his medical notes that plaintiff had already had a workup on his neck and had received a nerve block in his neck with no significant relief.

12. On August 27, 1997, Dr. Mallon performed surgery for Plaintiff's torn rotator cuff. On October 14, 1997, Plaintiff did not complain about neck pain. On November 25, 1997, Plaintiff complained of neck pain but stated that his neck was not hurting like it did previously. Plaintiff continued to complain of pain in his neck and shoulder.

13. Plaintiff underwent a second surgery by Dr. Mallon on January 15, 1999 to excise approximately a centimeter of his clavicle. This surgery was related to plaintiff's January 3, 1996 injury. Defendants reinstated his temporary total disability benefits on January 15, 1999 and paid plaintiff benefits until May 17, 1999, when plaintiff was due to return to work. After his second surgery, plaintiff had some improvement, but subsequently began complaining of right arm pain again after he reported that he had re-injured himself on May 26, 1999 when he pulled a part off an air conditioner and experienced a sharp shooting pain in his shoulder.

14. Plaintiff had not previously undergone an MRI due to his size. Dr. Mallon noted that plaintiff's weight had dropped from 340 to 235. On August 5, 1999, Dr. Mallon assigned the following restrictions to Plaintiff: no overhead use of the right arm, no raising right arm above shoulder level, no lifting of more than ten pounds, no ladders and no unrestricted heights.

15. On November 6, 2000, Plaintiff reported to Dr. Mallon that most of his pain was in his neck area. Dr. Mallon had a functional capacity examination (FCE) performed. It revealed myofascial pain around the levator scapula, trapezius and scalene muscles (all muscles in the neck). Plaintiff also demonstrated a positive impingement sign.

16. As the result of an FCE, Dr. Mallon placed Plaintiff on the following restrictions: no lifting over 10 pounds, no overhead work and no overhead lifting. However, the sharp pain in Plaintiff's neck and right shoulder and arm returned. Dr. Mallon believed that there was a nerve problem, but he indicated to Plaintiff he had done all he could. On June 12, 2001, Dr. Mallon referred Plaintiff to Dr. Lynn Johnson at Greenville Pain Clinic.

. . .

19. An MRI taken in March 2002 revealed cervical herniated discs at C5-6 and C6-7. When asked during his deposition whether Plaintiff's compensable injury on January 3, 1996 caused the herniated cervical discs, Dr. Mallon responded, "I guess it could have."

These extensive findings of fact regarding Dr. Mallon's evaluations of plaintiff make it clear the Commission did "consider and evaluate" the evidence presented by Dr. Mallon as required in *Gutierrez*.

*Gutierrez*, 169 N.C. App. at 176, 609 S.E.2d at 448. Plaintiff's argument in this respect has no merit.

Defendants further argue under *Gutierrez* the Commission erred by "fail[ing] to make a finding of fact with regard to why Dr. Mallon's deposition testimony was given no weight as compared to the testimony of Dr. Voos." Defendants incorrectly interpret *Gutierrez* as requiring this Court to reverse the Commission where it gave one expert's opinion greater weight than another's. "The commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Adams v. AVX Corp.*, 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998) (citation omitted). As we previously noted, where the evidence is conflicting, the Commission's findings of fact are conclusive on appeal. *Id.* at 682, 509 S.E.2d at 414. Therefore, as long as it is clear from the record the Commission did consider conflicting expert testimony, we will not question its acceptance of one theory over another. "[T]his Court 'does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding.' " *Id.* at 681, 509 S.E.2d at 414 (citation omitted). Therefore, defendant's second argument is overruled.

**[3]** Defendants' final argument is that the opinion and award of the Commission should be reversed because the Commission failed to make any findings of fact with regard to the consideration, credibility and relevancy of plaintiff's failure to inform his initial treating physicians of his alleged cervical spine injury. Defendants again rely on *Gutierrez*, where this Court concluded the Commission erred by not entering findings of fact regarding plaintiff's failure to report her back injury to a physician treating her for unrelated medical problems. We determined her failure to mention her back pain to the physician treating her for menstrual problems and headaches was "material evidence" indicating her back injury may have resolved, and the Commission therefore should have entered "a finding of fact regarding the consideration, credibility, or relevancy" of this conflicting evidence. *Gutierrez*, 169 N.C. App. at 176, 609 S.E.2d at 448.

In the present case, defendants contend plaintiff failed to complain of neck pain between 3 January 1996 and 20 March 1996. Plaintiff did, however, make continuous complaints of severe and persistent shoulder pain. First, we note both Dr. Wooten and Dr. Voos testified that pain medication and the rotator cuff tear in plaintiff's shoulder might have masked the symptoms of plaintiff's neck injury

during that period of time, and Dr. Mallon testified that shoulder and neck "symptoms overlap quite a bit." Also, in *Gutierrez*, the Commission failed to enter any findings of fact regarding the testimony of a treating physician whose testimony constituted "material evidence" that plaintiff might have recovered from her injury. Here, in contrast, the Commission did make findings of fact indicating plaintiff did not complain of neck pain until 3 May 1996, four months after his accident. It also made findings, however, that all of plaintiff's treating physicians testified plaintiff's neck pain "could" have been or was "likely" caused by his 3 January 1996 accident. Therefore, it is clear the Commission did consider plaintiff's failure to complain specifically of neck pain between January and March of 1996 yet still determined the January accident "likely" caused his neck injury. We cannot find, as in *Gutierrez*, that the Commission failed to consider conflicting evidence.

Defendants also argue the Commission's findings do not address plaintiff's failure to complain of neck pain to Dr. Mallon even though he testified at the hearing his neck had never stopped hurting since 3 January 1996. We listed the Commission's findings of fact regarding Dr. Mallon's testimony above, including the following: (1) "[o]n October 14, 1997, Plaintiff did not complain about neck pain" to Dr. Mallon; (2) "[o]n November 25, 1997, Plaintiff complained of neck pain but stated that his neck was not hurting like it did previously;" (3) "[p]laintiff continued to complain of pain in his neck and shoulder;" (4) Dr. Mallon performed a functional capacity examination which revealed a positive impingement sign and pain in plaintiff's neck muscles; (5) Dr. Mallon believed plaintiff had a nerve problem; and (6) Dr. Mallon stated plaintiff's accident "could have" caused the herniated cervical discs. These findings indicate the Commission fully considered plaintiff's initial failure to report neck pain to Dr. Mallon. It is not this Court's role to weigh the credibility of the evidence. *Adams v. AVX Corp.*, 349 N.C. at 680-81, 509 S.E.2d at 413-14; *see also Gutierrez*, 169 N.C. App. at 176, 609 S.E.2d at 448. We have already concluded there was competent evidence to support the Commission's decision that plaintiff's accident caused his cervical disc herniation. Therefore, having determined the Commission fully weighed conflicting evidence, we must overrule defendants' third and final argument and affirm the decision of the Commission.

Affirmed.

Judges McGEE and STEELMAN concur.