EMILIO DAVIS, Employee, Plaintiff v. CITY OF NEW BERN, Employer, SELF-INSURED (CRAWFORD & COMPANY, Servicing Agent), Defendants

No. COA07-785

(Filed 15 April 2008)

**1. Workers' Compensation— ex parte contact with physician—testimony struck**

The Industrial Commission did not err in a workers' compensation case by striking the testimony of one of plaintiff's treating physicians where there were nonconsensual ex parte communications by the physician with defendants.

**2. Workers' Compensation— causation—speculative medical testimony**

The Industrial Commission erred by awarding workers' compensation where the medical evidence was too speculative to establish medical causation and disability. Plaintiff may not rely on "could" or "might" expert testimony to establish causation where other evidence showed that the testimony was speculative.

---

DAVIS v. CITY OF NEW BERN

[189 N.C. App. 723 (2008)]

Appeal by defendants from an opinion and award entered 2 February 2007 by the North Carolina Industrial Commission. Heard in the Court of Appeals 9 January 2008.

*Edwards & Ricci, P.A., by Brian M. Ricci, for plaintiff-appellee.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by John A. Tomei, for defendant-appellants.*

HUNTER, Judge.

The City of New Bern and Crawford & Company (collectively "defendants") appeal an opinion and award from the Full Industrial Commission ("the Commission") which granted Emilio Davis ("plaintiff") workers' compensation benefits. After careful consideration, we affirm in part and reverse in part.

On 5 May 2003, plaintiff was employed by defendant Crawford & Company in a Maintenance II position, which involved laying sewer and water pipes, making taps, and installing water meters, as well as operating a vacuum truck. On that date, plaintiff slipped and fell, head first, into a sewer pit, injuring his back and shoulder.

After the accident, Dr. Angelo Tellis treated plaintiff for a lumbosacral strain/sprain, noting that plaintiff did not have significant radicular pain, and prescribed anti-inflammatory and pain medications. Dr. Tellis also restricted plaintiff to sedentary activity at that time.

Dr. Tellis continued his treatment of plaintiff during the summer of 2003 and ordered an MRI of plaintiff after he told Dr. Tellis that he had been feeling pain in his left thigh. The MRI revealed no significant disk bulges or neural foraminal narrowing but did reveal degenerative changes at L4-5. When physical therapy and medications failed to resolve plaintiff's symptoms, Dr. Tellis performed bilateral SI joint injections on 12 August 2003, which provided plaintiff with temporary relief, after which plaintiff was placed back into physical therapy. On 22 September 2003, plaintiff complained to Dr. Tellis of pain in the right side of his lower back and increased pain in his chest. Dr. Tellis continued with the course of physical therapy and sedentary work restrictions, but recommended the use of a cane to help plaintiff become more mobile.

Upon request of defendants, plaintiff was seen by Dr. Kasselt, an orthopedist. Dr. Kasselt noted that plaintiff performed well on

DAVIS v. CITY OF NEW BERN

[189 N.C. App. 723 (2008)]

strength tests, used to determine mobility. Dr. Kasselt recommended that plaintiff undergo a psychological evaluation, a functional capacity evalaution, and an MRI of his hips to exclude the possibility of avascular necrosis, and that plaintiff discontinue his use of anti-inflammatory and narcotic medications.

Because plaintiff's condition was not improving, he sought chiropractic treatment at this own expense from Dr. Gatlin for approximately two months. Plaintiff also went to his family doctor, Dr. Farina, who ordered nerve tests. The tests showed mild left carpal tunnel syndrome but no significant nerve compression. Due to the lack of nerve compression, Dr. Farina did not recommend a referral to a neurosurgeon.

On 6 February 2004, plaintiff sustained a second compensable work injury. Plaintiff was working in a ditch with a vacuum hose when he slipped, fell on his back, and struck his head. Plaintiff felt immediate back and head pain and numbness in his legs. Coworkers summoned an ambulance, which took him to the hospital. Dr. Kevin Geer examined him upon his arrival at Craven Regional Medical Center. Dr. Geer found no neurological damage but plaintiff was anxious and hyperventilating. Dr. Geer took plaintiff out of work for three days and restricted him to light duty work.

On 8 February 2004, plaintiff returned to the emergency room with complaints of numbness on the bottom of his feet. An MRI was negative as to any disc herniation, spinal stenosis, or neuroforaminal stenosis. Defendants admitted liability under the Workers' Compensation Act for this second injury pursuant to a Form 60 and sent plaintiff to Dr. Virginia Ward for treatment.

Dr. Ward examined plaintiff on 10 February 2004. She noted that plaintiff gave an extreme pain response when palpating his back muscles. Dr. Ward stated that it was difficult to examine plaintiff due to his over-reaction to touch and movement. She kept plaintiff out of work, prescribed medications, and ordered a functional capacity work hardening program. Dr. Ward also ordered a work-hardening program due to plaintiff's poor physical condition.

Defendants ultimately offered plaintiff light duty work on 20 April 2004. Plaintiff engaged in office type work but had problems staying awake due to his medications.

Plaintiff was still complaining of pain and eventually sought treatment from Dr. Michael Apostolou, a neurologist, at his own expense

because defendants would not authorize a referral to another doctor. Dr. Apostolou prescribed various medications to plaintiff in an effort to alleviate the pain. When plaintiff did not respond to the medications, Dr. Apostolou performed an electrodiagnostic test on 10 September 2004.

The electrodiagnostic test did not reveal a clear indication as to the cause of plaintiff's symptoms. Instead, there was some evidence of demyelinative damage of some peripheral nerves, which was not likely to be traumatic in origin. There was also an indication that plaintiff had no problem with his lumbar and had good strength in his legs.

Plaintiff continued to complain about worsening pain in September 2004. Dr. Apostolou was puzzled by this development in light of the nerve test results. Dr. Apostolou also questioned the relationship of the pain to the work related injury. After reviewing Dr. Apostolou's note, defendants advised plaintiff that light duty work would no longer be provided as of 5 November 2004. Plaintiff stopped working on 4 November 2004.

Defendants present the following issues for this Court's review: (1) whether the Commission committed reversible error when it struck expert testimony upon a finding that the expert had non-consensual, *ex parte* communication with defendants; and (2) whether the evidence before the Commission was so speculative that the Commission erred in awarding plaintiff workers' compensation benefits.

Our review of an opinion and award of the Commission is limited to a determination of: "(1) whether the Commission's findings of fact are supported by any competent evidence in the record; and (2) whether the Commission's findings justify its conclusions of law." *Goff v. Foster Forbes Glass Div.*, 140 N.C. App. 130, 132-33, 535 S.E.2d 602, 604 (2000). If supported by competent evidence, the Commission's findings are binding on appeal even when there exists evidence to support findings to the contrary. *Allen v. Roberts Elec. Contr'rs*, 143 N.C. App. 55, 60, 546 S.E.2d 133, 137 (2001).

The Commission's conclusions of law are reviewed *de novo*. *Id.* at 63, 546 S.E.2d at 139. Accordingly, "[w]hen the Commission acts under a misapprehension of the law, the award must be set aside and the case remanded for a new determination using the correct legal standard." *Ballenger v. ITT Grinnell Industrial Piping*, 320 N.C. 155, 158, 357 S.E.2d 683, 685 (1987).

DAVIS v. CITY OF NEW BERN

[189 N.C. App. 723 (2008)]

I.

[1] Defendants first argue that the trial court erred in striking the opinions of Dr. Max R. Kasselt.[1] We disagree.

The Commission struck the opinions of Dr. Kasselt, one of plaintiff's treating physicians, upon a finding that Dr. Kasselt engaged in non-consensual, *ex parte* communications with defendants' adjuster. Defendants do not dispute the fact that Dr. Kasselt had a conversation with the adjuster, during which he suggested that surveillance be conducted on plaintiff to determine the validity of his symptoms. The Commission thereafter determined that Dr. Kasselt's allegiances were with defendants and not plaintiff.

Non-consensual, *ex parte* communications between defendants and a plaintiff's treating physician are prohibited. *Salaam v. N.C. Dept. of Transportation*, 122 N.C. App. 83, 87, 468 S.E.2d 536, 538-39 (1996). The proper remedy for such *ex parte* communication is to strike the treating physician's deposition testimony. *Evans v. Young-Hinkle Corp.*, 123 N.C. App. 693, 696, 474 S.E.2d 152, 153-54 (1996). Accordingly, when the commission found that Dr. Kasselt engaged in non-consensual, *ex parte* communications with defendants, it properly struck the testimony. However, this Court is not bound by this finding unless it is supported by competent evidence.

Defendants contend that Dr. Kasselt made "recommendations, with no communication or other suggestion by defendants." They thus argue that the rule announced in *Salaam* should not apply as defendants did not solicit the information from plaintiff's treating physician. Although the evidence presented before the Commission could support such a finding, there is also evidence suggesting that defendants contacted Dr. Kasselt. Specifically, there is evidence that defendants contacted Dr. Kasselt regarding whether plaintiff would need a cane. There was also evidence, based on Dr. Kasselt's own notes, that he and one of defendants' employees "discussed the situation[.]" The obvious implication of this statement is that it was a two-way conversation, not one in which defendants were merely listening. Additionally, all of Dr. Kasselt's records were copied directly to defendants without plaintiff's consent. Under such circumstances, we cannot say that the commission erred in concluding that defendants engaged in *ex parte* communications with Dr. Kasselt.

---

1. Although the Commission struck Dr. Kasselt's opinions, his medical records noting plaintiff's complaints and his course of treatment were allowed and were summarized in the Commission's opinion and award.

Because competent evidence supports the Commission's findings of fact that defendants' non-consensual, *ex parte* communications required Dr. Kasselt's testimony to be stricken from the record, the Commission did not err in striking the testimony. Defendants' assignments of error as to this issue are therefore overruled.

II.

[2] Defendants next argue that the Commission erred in awarding plaintiff workers' compensation after 4 November 2004 because the medical evidence was too speculative to establish medical causation and disability. We agree.

In reviewing findings of fact made by the Commission, we review those findings to determine whether they are supported by competent evidence. *Edmonds v. Fresenius Med. Care*, 165 N.C. App. 811, 817, 600 S.E.2d 501, 505-06 (2004) (Steelman, J., dissenting), *reversed per curiam for reasons stated in dissent*, 359 N.C. 313, 608 S.E.2d 755 (2005). If supported by competent evidence, then they are binding on appeal, even though there was evidence to support contrary findings. *Id.* (citing *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 597 S.E.2d 695 (2004)). This Court will not "sift through the evidence and find facts that are different from those actually found by the Commission." *Id.*

"Expert testimony that a work-related injury 'could' or 'might' have caused further injury is insufficient to prove causation when other evidence shows the testimony to be 'a guess or mere speculation.'" *Cannon v. Goodyear Tire & Rubber Co.*, 171 N.C. App. 254, 264, 614 S.E.2d 440, 446-47 (2005) (quoting *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 233, 538 S.E.2d 912, 916 (2000); citing *Edmonds*, 165 N.C. App. at 818, 608 S.E.2d at 506). Instead, expert testimony can serve as competent evidence as to causation where the testimony "establishes that a work-related injury '*likely*' caused further injury[.]" *Id.* at 264, 614 S.E.2d at 447 (emphasis added).

Plaintiff concedes that his evidence consists of "could or might" expert testimony regarding the cause of plaintiff's injury. Plaintiff, however, argues that there is no evidence indicating that the testimony was guess work or mere speculation under *Edmonds*. Simply put, a plaintiff may not rely on "could" or "might" expert testimony to establish causation where there is some evidence that the testimony was speculative.[2] We find evidence of speculation in the record and therefore reverse the Commission as to this issue.

2. We note that plaintiff relies on *Jarrett v. McCreary Modern, Inc.*, 167 N.C. App. 234, 241, 605 S.E.2d 197, 202 (2004), which was decided before *Edmonds* and *Cannon*,

DAVIS v. CITY OF NEW BERN

[189 N.C. App. 723 (2008)]

Specifically, Dr. Ward testified that plaintiff's symptoms created a "very puzzling picture." Dr. Ward also noted that plaintiff's symptoms were even more unusual, given the rather "minor trauma" that he suffered. Dr. Apostolou testified that it was "possible" that plaintiff's symptoms were the product of a traumatic injury but also presented evidence that the symptoms were consistent with a chronic process. Dr. Voos's testimony is also speculative as he only testified that plaintiff's injury "could" or "might" be work related. Dr. Tellis also stated that plaintiff's back and leg pain were of "uncertain etiology"; a statement with which Dr. Voos agreed.

Dr. Gridley, a psychologist, concluded that plaintiff was suffering from a conversion disorder, somatic complaints, and neurologic symptomatology, not the result of a traumatic workplace injury. Dr. Gridley believed that plaintiff could return to work without restrictions, with the possible exception of needing supervision. He also testified that plaintiff could be malingering, particularly if there was no response to further treatment. Another psychiatrist, Dr. Hoeper, diagnosed plaintiff with conversion disorder and a probable lumbosacral muscle strain. He also testified that plaintiff needed to return to work.

After hearing all the evidence, the Commission made the following findings of fact that are relevant to this issue:

17. Plaintiff began complaining of worse pain in September 2004 without having had further injury or doing significant work activity. Dr. Apostolou was puzzled by this development, particularly in view of the conflicting nerve test results, and he questioned its relationship to the injury at work. Defendant-employer had given plaintiff a light duty job marking where water and sewer lines were located. However, after reviewing Dr. Apostolou's office note, defendant stopped authorizing further medical treatment and advised plaintiff that light duty work would no longer be provided as of November 5, 2004. Consequently, plaintiff stopped working on November 4, 2004. He remained out of work until January 17, 2005[,] when he began driving a truck on a part-time basis for a trucking company. He drove a dump truck for several months, but the bouncing motion of the truck caused him to experience increasing back pain. By April 2005 he was having considerable difficulty getting out of the truck and he stopped working after April 22, 2005.

the cases relied on by defendants that were neither acknowledged nor distinguished in plaintiff's brief.

18. Except for an emergency room visit on October 16, 2004, in which the emergency room physician recommended a pain management consultation, plaintiff did not receive further known medical care until July 20, 2005[,] when he went back to Dr. Tellis, whom he had not seen since November 2003. Dr. Tellis reviewed his history of subsequent injury and treatment. Dr. Tellis was unable to specifically identify the etiology of Plaintiff's back and leg pain, but thought it might be due to sacroiliitis. Dr. Tellis performed a left sacroiliac joint injection on August 3, 2005. There was no indication that he ever saw plaintiff again in follow-up.

. . .

20. Plaintiff then received sponsorship from the North Carolina Division of Vocational Rehabilitation Services and was able to receive further medical treatment. The physician's assistant for Dr. Voos evaluated him on September 2, 2005. The examination revealed abnormal neurological findings, so the physician's assistant ordered cervical and lumbar myelograms in order to rule out any impingement on the spinal cord and any nerve root compression. At plaintiff's follow-up visit, Dr. Voos examined him and reviewed the myelogram, as well as the MRI performed in August 2005. There was no evidence of cord impingement in the cervical spine and no evidence of nerve impingement in the lumboscacral spine, except for the Tarlov cyst. The disk at L4-5 was bulging somewhat and Dr. Voos thought that it might be degenerative. Dr. Voos was of the opinion that a discogram would be necessary in order to verify his impressions and, until plaintiff's symptoms became intolerable, he did not believe a discogram would be warranted. Consequently, he ordered therapy, including aquatherapy.

In summation, there was no expert testimony that the work-related injury "likely" caused plaintiff's symptoms. Moreover, as noted above, there is ample evidence that the doctors treating plaintiff were uncertain as to the issue of causation.[3] We find that, like in *Edmonds*, the expert testimony in this case "does not rise above a

---

3. By way of comparison, plaintiff's own expert in this case, Dr. Voos, has testified in a different, unrelated case that a plaintiff's medical problems were "likely" caused by a workplace injury. *Avery v. Phelps Chevrolet*, 176 N.C. App. 347, 354-55, 626 S.E.2d 690, 695 (2006). In that case, this Court affirmed the opinion and award of the Full Commission as Dr. Voos's testimony, although contradicted by several other experts, was competent evidence to support the award of workers' compensation. In the instant case, there is no medical evidence of plaintiff's medical issues as being "likely" caused by a workplace injury. *Id.* at 355, 626 S.E.2d at 695.

guess or mere speculation[.]" *Edmonds*, 165 N.C. App. at 818, 600 S.E.2d at 506. The opinion and award of the Commission is therefore not supported by competent evidence and is reversed. In light of this holding, we need not reach defendants' final argument.

## III.

In conclusion, we affirm the Commission's ruling to strike the testimony of one of plaintiff's treating physicians as he engaged in non-consensual, *ex parte* communications with defendants. We reverse the Commission's finding regarding the cause of plaintiff's injury as it was not supported by competent evidence.

Affirmed in part; reversed in part.

Judges CALABRIA and STROUD concur.