An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-17

NORTH CAROLINA COURT OF APPEALS

Filed:  2 September 2014


JOEL L. COLE, JR.,
Employee,
     Plaintiff

     v.                              From the North Carolina
                                     Industrial Commission
                                     I.C. No. W67557

UNITED PARCEL SERVICE, INC.,
Employer,

and

LIBERTY MUTUAL INSURANCE CO.,
Carrier,
     Defendants.


     Appeal by defendants from Opinion and Award entered 16 August 2013 by the North Carolina Industrial Commission.  Heard in the Court of Appeals 8 May 2014.


     *Patterson Harkavy LLP, by Narendra K. Ghosh, Henry N. Patterson, and Paul E. Smith, for plaintiff-appellee.*

     *Hedrick Gardner Kincheloe & Garofalo, LLP, by Jennifer I. Mitchell and M. Duane Jones, for defendants-appellants.*


     DAVIS, Judge.


     United Parcel Service, Inc. ("UPS") and Liberty Mutual Insurance Company (collectively "Defendants") appeal from an

Opinion and Award of the North Carolina Industrial Commission ("the Commission") awarding Joel L. Cole, Jr. ("Plaintiff") (1) temporary total disability benefits for the period from 12 December 2009 through 4 February 2010; (2) costs for medical treatment related to his injury from 11 December 2009 through 4 February 2010; and (3) attorneys' fees in the amount of 25% of Plaintiff's temporary total disability award. On appeal, Defendants argue that the Commission erred in concluding that Plaintiff's lower back condition was causally related to a work-related injury suffered on 11 December 2009. After careful review, we affirm the Commission's Opinion and Award.

## Factual Background

At the time of the hearing, Plaintiff was 46 years old. Plaintiff began working for UPS on 30 August 1985. As of December 2009, Plaintiff was a feeder driver. This job required him to drive tractor-trailers approximately 200 to 500 miles per day. He was also required to lift up to 70 pounds of dolly[1] equipment and to assist in moving packages weighing up to 150 pounds.

On 11 December 2009, Plaintiff was working at UPS's North Wilkesboro Hub Center. His supervisor, LaShay Cross ("Mr.

---

[1] A dolly is a piece of equipment used to couple two trailers together such that they can both be pulled by one tractor.

Cross"), instructed him to attach two trailers to a tractor and pull them to the Greensboro terminal. While lifting a dolly in order to attach one of the trailers to his tractor, Plaintiff felt a sharp pain shoot from his left foot up to the back of his neck. After a few minutes, the pain lessened and Plaintiff was able to continue working. He called Mr. Cross to tell him that he had suffered an injury. Plaintiff then drove from Wilkesboro to the Greensboro terminal, where he dropped off the two trailers and picked up another trailer to haul to Winston-Salem. Upon arriving in Winston-Salem, Plaintiff called Mr. Cross a second time, asking if he could "check out" and go home because he was still in pain. After completing his delivery, Plaintiff returned to his home at around 4:00 a.m. By this time, the pain in his back had become so acute that he was having difficulty walking and "had to crawl in the house."

When Plaintiff awoke later that morning, his pain had worsened. Plaintiff was transported to the emergency room at Forsyth Medical Center. At the emergency room, Plaintiff "complained of back pain, radiating to the left leg, at a 10/10 level of severity." Plaintiff was given pain medication and instructed to rest and stay out of work for four days.

On 17 December 2009, Plaintiff was examined by his primary care physician, Dr. John Galbreath ("Dr. Galbreath"). Dr. Galbreath instructed Plaintiff to remain out of work and ordered a lumbar spine MRI scan. The MRI scan showed abnormalities consistent with possible infection, significant swelling, and severe facet joint degeneration at the L4 and L5 joints on the left side of his spine. In light of these findings, Plaintiff was instructed to go to the hospital.

On 18 December 2009, Plaintiff was admitted to Forsyth Medical Center, where he came under the care of Dr. Arthur Link ("Dr. Link"), a specialist in infectious diseases. Dr. Link's diagnosis upon admission was back pain secondary to lumbar abscess. Plaintiff was given antibiotics intravenously by a peripherally inserted central catheter ("PICC") line. During his hospitalization, Plaintiff developed pain in his left knee. His knee was aspirated, and gout crystals were found.

On 24 December 2009, Plaintiff was discharged from the hospital. On 5 January 2010, Defendants sent Plaintiff to Dr. Shawn Dalton-Bethea ("Dr. Dalton-Bethea"), a pain management specialist, for a one-time evaluation. Dr. Dalton-Bethea's impression was that Plaintiff's condition was present before the

11 December 2009 incident and that his infection was not the result of the incident.

Plaintiff continued to receive antibiotics via a PICC line administered by a nurse at his home. On 6 January 2010, Plaintiff was seen by Dr. David Priest ("Dr. Priest"), Dr. Link's partner. Dr. Priest completed a short-term disability claim form on 26 February 2010, certifying that Plaintiff's disability was "due to employment" and began on 12 December 2009. On 9 May 2011, Plaintiff was evaluated by Dr. Thomas Craig Derian ("Dr. Derian"), an orthopedic surgeon who specializes in the lumbar spine and the treatment of infectious conditions that impact the spine. Dr. Derian determined Plaintiff's condition was "most consistent with underlying facet joint degeneration at L4-5 and L5-S1, with degenerative spondylolisthesis, with a work-related injury on 11 December 2009, likely resulting in inflammation in that area, which became secondarily infected via some other, unknown, source." Plaintiff eventually returned to work on 21 October 2011.

On 15 February 2010, Plaintiff filed a workers' compensation claim. Defendants denied the claim on 22 March 2010. On 15 February 2010, Plaintiff submitted a request to the

North Carolina Industrial Commission that his claim be assigned for hearing.

On 14 March 2012, Plaintiff's case was heard by Deputy Commissioner Robert J. Harris. On 7 January 2013, the deputy commissioner issued an Opinion and Award, concluding that Plaintiff had sustained a compensable injury to his lower back as a result of the work-related injury. Based on these conclusions, the deputy commissioner issued an award to Plaintiff that included (1) temporary total disability benefits for the period from 12 December 2009 through 4 February 2010; and (2) the requirement that Defendants pay for all medical treatment he had received from 11 December 2009 through 4 February 2010.

Defendants appealed the decision to the Full Commission, which heard the appeal on 12 June 2013. On 16 August 2013, the Commission issued its Opinion and Award, with one commissioner dissenting, affirming the deputy commissioner's decision and concluding, in pertinent part, as follows:

> 1. Based upon the preponderance of the evidence from the entire record, plaintiff has shown that he sustained a compensable injury to his low back by specific traumatic incident on 11 December 2009.
>
> 2. Based upon the preponderance of the evidence from the entire record, plaintiff

has shown that his continuing low back condition after 11 December 2009, specifically the inflammatory process that required his December 2009 hospitalization and the ongoing treatment thereafter, was the result of a substantial aggravation of a pre-existing condition and/or was a direct and natural consequence of the 11 December 2009 injury and was itself thus compensable.

(Citations omitted.) Defendants filed a timely notice of appeal to this Court.

## Analysis

Defendants argue that the Commission erred in concluding that Plaintiff's back condition was causally related to his 11 December 2009 injury. We disagree.

Under the Workers' Compensation Act, the claimant bears the burden of showing that the injury "arose out of and in the course of his employment." *Lewis v. W.B. Lea Tobacco Co.*, 260 N.C. 410, 412, 132 S.E.2d 877, 879 (1963) (emphasis omitted).

> To be compensable an injury must spring from the employment or have its origin therein. An injury arises out of the employment when it is a natural and probable consequence or incident of the employment and a natural result of one of its risks, so that there is some causal relation between the injury and the performance of some service of the employment.

*Perry v. Am. Bakeries Co.*, 262 N.C. 272, 274, 136 S.E.2d 643, 645 (1964).

Our review of an Opinion and Award by the Commission is "limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law." *Richardson v. Maxim Healthcare/Allegis Grp.*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008). The Commission's findings of fact are conclusive on appeal if supported by competent evidence even if there is evidence to support contrary findings. *Avery v. Phelps Chevrolet*, 176 N.C. App. 347, 353, 626 S.E.2d 690, 694 (2006). On appeal, this Court will not "weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Smith v. Champion Int'l*, 134 N.C. App. 180, 182, 517 S.E.2d 164, 166 (1999) (citation and quotation marks omitted).

When the Commission relies on expert medical testimony to make its findings, the expert's testimony "must be such as to take the case out of the realm of conjecture and remote possibility" in order to constitute competent evidence of a causal relationship between the work-related incident and the injury. *Rogers v. Lowe's Home Improvement*, 169 N.C. App. 759,

765, 612 S.E.2d 143, 147 (2005) (citation and quotation marks omitted).

In the present case, among the findings of fact made by the Commission were the following:

> 5. Plaintiff had not had any significant low back problems at any time before 11 December 2009. As of the occurrence of the incident in this claim, plaintiff was not having any physical problems, other than some residual impairment relating to an old work-related right ankle injury. Plaintiff was physically active outside of work and worked out regularly.
>
> . . . .
>
> 36. As Dr. Link wrote in a letter dated 20 January 2010, "(Plaintiff) is a patient whom we are seeing in our office for epidural and left paraspinous muscle inflammation, presumed to be an infectious process. This developed following an injury, which occurred at work, and I feel is a direct result of his work-related injury." At his deposition, Dr. Link confirmed that he felt "fairly certain" of his opinion as stated in the letter.
>
> 37. Regarding Dr. Dalton-Bethea's conclusion that the infection pre-dated the dolly-lifting incident and that the incident merely brought the infection to light — that essentially plaintiff had a minor back strain and an infection simultaneously and that one had nothing at all to do with the other, or that plaintiff did not even suffer a minor back strain and just happened to first notice acute pain from an infection as he was lifting the dolly — Dr. Link felt that such a scenario was possible. Dr. Link

agreed that it was more likely than not that the infection did pre-date the incident, although he characterized the question of when exactly the infection began as "unanswerable."

38. When asked in his deposition whether the dolly-lifting incident had a causal relationship to the condition for which plaintiff was hospitalized, Dr. Link stated that there were two possible scenarios — that the incident caused bruising, which pre-disposed plaintiff to the development of the infection; or that the infection was already in plaintiff's system, which made his low back area vulnerable to an injury and a specific infection, and the incident "triggered" plaintiff's condition. As Dr. Link further testified, he could not "say with certainty either way" which scenario actually occurred. The Full Commission finds that the occurrence of either scenario would be compensable, with the first being an infection that was a direct and natural result of a physical injury, and the second being a substantial aggravation of a pre-existing condition.

. . . .

41. As Dr. Derian testified, plaintiff's findings were most consistent with underlying facet joint degeneration at L4-5 and L5-S1, with degenerative spondylolisthesis, with a work-related injury on 11 December 2009, likely resulting in inflammation in that area, which became secondarily infected via some other, unknown, source. As Dr. Derian further noted, there may have been gout involvement as well, as plaintiff had gout, which can degenerate a joint and thus make it more vulnerable to injury and/or create an environment where infection can occur.

. . . .

43. As Dr. Derian testified, the dolly-lifting incident was a symptomatic aggravation and/or activation of plaintiff's underlying gout-based arthritis, with subsequent severe inflammation, with or without infection. This condition necessitated a very complex sequence of medical interventions that were required and that induced gradual improvement in plaintiff's condition.

44. The Full Commission accords more weight to the causation testimony of Drs. Link and Derian than to that of Drs. Priest and Dalton-Bethea. Dr. Link was plaintiff's treating physician throughout the entire episode, beginning early in his hospitalization. Dr. Derian's specialty is the lumbar spine, and his testimony about the complex process that occurred in plaintiff's low back in this matter was thoughtful, cogent and convincing. Dr. Priest did not become involved in plaintiff's treatment until after his hospitalization. Dr. Dalton-Bethea is a pain management specialist, while Drs. Link and Derian bring specialties to bear that are more directly applicable to the facts of this claim.

. . . .

46. Plaintiff's medical treatment for his low back condition at Forsyth Medical Center, his hospitalization, and his treatment and diagnostic testing and imaging with and/or at the direction of Dr. Galbreath and the physicians with Infectious Disease Specialists, through 4 February 2010, was all reasonably required to effect

a cure, provide relief and/or lessen the period of plaintiff's disability.

Based on these factual findings, the Commission made conclusions of law stating, in pertinent part, as follows:

2. Based upon the preponderance of the evidence from the entire record, plaintiff has shown that his continuing low back condition after 11 December 2009, specifically the inflammatory process that required his December 2009 hospitalization and the ongoing treatment thereafter, was the result of a substantial aggravation of a pre-existing condition and/or was a direct and natural consequence of the 11 December 2009 injury and was itself thus compensable. . . .

3. Plaintiff has the burden of showing he is unable to earn the same wages he earned before the injury, either in the same employment or in other employment. . . . Plaintiff can meet this burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the injury, incapable of any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in obtaining employment; (3) the production of evidence that he is capable of some work but that it would be futile to seek other employment because of preexisting conditions, i.e., age, inexperience, lack of education; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. *Russell v. Lowes Product Distrib.*, 108 N.C. App. 762, 425 S.E.2d 454 (1993).

> 4. Plaintiff has met his burden of proving disability under prong (1) of *Russell* by demonstrating that he was entirely unable to work from 12 December 2009 through 4 February 2010. He is thus entitled to receive temporary total disability compensation for said period. N.C. Gen. Stat. §§ 97-2(9) and 97-29; *Russell v. Lowes Product Distrib.*, 108 N.C. App. 762, 425 S.E.2d 454 (1993).

Defendants challenge the Commission's determination that Plaintiff's workplace injury caused or exacerbated his back condition, arguing that the medical testimony in this case was insufficient to establish causation to the degree required under the Workers' Compensation Act. Defendants state in their brief that they are challenging findings of fact 5, 36-38, 41, 43-44, and 46 and conclusions of law 2-3. In essence, however, their entire argument on appeal is that the Commission erred in relying on the opinions of Drs. Link and Derian because the opinions expressed by these two doctors were impermissibly speculative. Therefore, Defendants argue, Plaintiff failed to establish the causal connection necessary to support a conclusion that Plaintiff suffered a compensable injury under the Workers' Compensation Act. We disagree.

Our Supreme Court has made clear that "(1) the Full Commission is the sole judge of the weight and credibility of the evidence, and (2) appellate courts reviewing Commission

decisions are limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000).

Here, the Commission made it clear that it deemed Dr. Derian's and Dr. Link's testimony to be credible. In conclusion of law 2, the Commission determined that Plaintiff's lower back inflammation that resulted in his hospitalization and continued treatment following discharge "was the result of a substantial aggravation of a pre-existing condition and/or was a direct and natural consequence of the 11 December 2009 injury and was itself thus compensable." In reaching this conclusion, the Commission elected to give greater weight to the causation testimony of Drs. Link and Derian than to that of Drs. Priest and Dalton-Bethea. In finding of fact 44, the Commission stated:

> Dr. Link was plaintiff's treating physician throughout the entire episode, beginning early in his hospitalization. Dr. Derian's specialty is the lumbar spine, and his testimony about the complex process that occurred in plaintiff's low back in this matter was thoughtful, cogent and convincing. Dr. Priest did not become involved in plaintiff's treatment until after his hospitalization. Dr. Dalton-

> Bethea is a pain management specialist, while Drs. Link and Derian bring specialties to bear that are more directly applicable to the facts of this claim.

Competent evidence supports this finding. When asked if he had an opinion about whether there was a relationship between Plaintiff's injury and his lower back condition, Dr. Derian testified as follows:

> My opinion is that I believe that [Plaintiff] had underlying degeneration of facets and the disk areas at L4-5, and L5-S1, the lower two areas of the low back; that his lifting injury resulted in . . . an environment that then subsequently resulted in an infection. I think it is likely that he got a hematoma, or that he tremendously inflamed an area . . . where gout was involved with his spine. Both infection and gout are unproven in this case; neither one of those has been proven, because we don't know that that is how it happened, despite all the treatment . . . like I described earlier. And that in the absence of injury, he may have never had these symptoms.

Defendants argue that Dr. Derian's testimony amounts to mere speculation concerning the cause of Plaintiff's condition and, for this reason, is insufficient to establish causation. However, in order for expert medical testimony to constitute competent evidence on which the Commission may rely, "testimony attesting to medical certainty is not required." *Adams v. Metals USA*, 168 N.C. App. 469, 482-83, 608 S.E.2d 357, 365

(explaining that "[t]he fact that the treating physician in this case could not state with reasonable medical certainty that plaintiff's accident caused his disability, is not dispositive — the degree of the doctor's certainty goes to the weight of his testimony" (citation omitted)), *aff'd per curiam*, 360 N.C. 54, 619 S.E.2d 495 (2005).  Rather, as we have stated,

> our Supreme Court has created a spectrum by which to determine whether expert testimony is sufficient to establish causation in worker's compensation cases.  Expert testimony that a work-related injury "could" or "might" have caused further injury is insufficient to prove causation when other evidence shows the testimony to be "a guess or mere speculation."  However, when expert testimony establishes that a work-related injury "likely" caused further injury, competent evidence exists to support a finding of causation.

*Cannon v. Goodyear Tire & Rubber Co.*, 171 N.C. App. 254, 264, 614 S.E.2d 440, 446-47 (citation omitted), *disc. review denied*, 360 N.C. 61, 621 S.E.2d 177 (2005).

Although Plaintiff had a negative aspirate for infection in his spine, this did not prevent Dr. Derian, a lumbar spine specialist, from determining that Plaintiff's injury likely caused his lower back condition.  Dr. Derian testified that while

> [Plaintiff] is not documented as having an infection or gout, . . . he had findings

> consistent with either gout or infection superimposed on degeneration problems of spondylolisthesis at L4-5, structurally severe facet joint degeneration at L4-5, disk degeneration, and spinal stenosis at L4-5, L5-S1, with a disk rupture.

When asked if he had an opinion concerning whether Plaintiff's injury resulted in his ensuing symptoms and treatment, Dr. Derian answered affirmatively and testified as follows:

> I think that his injury resulted in either primary inflammation, hematoma, infection, activation of disk degeneration, infection, and/or gout, and that this resulted in a very complex sequence of medical interventions that were required, including initial treatment and then the intermediate recovery period, where inflammation was diminishing, as documented by MRI scans twice in 2010, and then the recovery . . . .

"The decision concerning what weight to give expert evidence is a duty for the Commission and not this Court." *Adams*, 168 N.C. App. at 483, 608 S.E.2d at 365. As long as a qualified expert "bases his or her opinions on evidence properly contained in the record, the Commission is entitled to rely on that testimony in making its decision." *Huffman v. Moore Cty.*, 208 N.C. App. 471, 490, 704 S.E.2d 17, 30 (2010) (citation omitted), *disc. review denied*, 365 N.C. 328, 717 S.E.2d 397 (2011). Dr. Derian's testimony was based on his evaluation of

Plaintiff as well as his review of Plaintiff's medical records and constituted more than mere speculation. Thus, the Commission was permitted to rely on Dr. Derian's testimony as to causation.

We likewise reject Defendants' similar argument regarding the Commission's reliance on Dr. Link's testimony. In his deposition, when asked whether there was a relationship between Plaintiff's injury and his subsequent lower back condition, Dr. Link testified:

> Well, I think it's an unanswerable question. You know, I think it's a possibility that when he did the lifting he caused some bruising, and that predisposed him to getting an infection in that area. I think it's also possible that it could have been a preexisting infection, and when he did the lifting, it triggered pain because the area was vulnerable to the infection.

Defendants argue that Dr. Link's testimony was speculative because he could not testify to a reasonable degree of medical certainty which of the two scenarios actually occurred. However, in finding of fact 38 the Commission recognized that "the occurrence of *either* scenario would be compensable, with the first being an infection that was a direct and natural result of a physical injury, and the second being a substantial aggravation of a pre-existing condition." (Emphasis added.)

*See Smith*, 134 N.C. App. at 182, 517 S.E.2d at 166 (holding work-related injury that aggravated preexisting condition was compensable under Workers' Compensation Act).

While there may have been conflicting medical testimony about the causal relationship between Plaintiff's low back condition and his work-related injury, it was for the Commission to weigh the credibility of the witnesses and render a decision. The testimony of Drs. Derian and Link served as sufficient evidence to support the Commission's findings of fact and conclusions of law challenged by Defendants. The Commission chose to give more weight to the testimony of Drs. Derian and Link than to the testimony of Drs. Dalton-Bethea and Priest. We lack the authority to second-guess its determination as to the proper weight to be accorded the medical testimony. *See Chavis v. TLC Home Health Care*, 172 N.C. App. 366, 369, 616 S.E.2d 403, 408 (2005) (noting that "[t]he full Commission's findings of fact are conclusive on appeal when supported by competent evidence even if there is evidence to support a contrary finding" (citation and quotation marks omitted)), *appeal dismissed*, 360 N.C. 288, 627 S.E.2d 464 (2006).

**Conclusion**

For the reasons stated above, the Commission's Opinion and Award is affirmed.

AFFIRMED.

Judges HUNTER, JR. and ERVIN concur.

Report per Rule 30(e).