ROGERS v. LOWE'S HOME IMPROVEMENT

[169 N.C. App. 759 (2005)]

———

RONNIE ROGERS, Employee, Plaintiff v. LOWE'S HOME IMPROVEMENT, Employer, SELF INSURED (SRS SPECIALTY RISK SERVICES, Servicing Agent), Defendant

No. COA04-845

(Filed 19 April 2005)

**Workers' Compensation— causation—medical history and testimony—credibility**

There was competent evidence to support the Industrial Commission's finding of causation in a workers' compensation case where the finding was that plaintiff first injured his hamstring, then suffered a herniated disk. Although defendant challenged the testimony of plaintiff's doctor as the product of an incomplete picture of plaintiff's history, the doctor was entitled to credit his patient's account of his own symptoms, and the

Commission found that plaintiff's testimony about his medical history was credible.

Appeal by defendant from opinion and award entered 11 March 2004 by the North Carolina Industrial Commission. Heard in the Court of Appeals 11 April 2005.

*Maynard & Harris, P.L.L.C., by Celeste M. Harris, for plaintiff appellee.*

*Robinson & Lawing, L.L.P., by Jolinda J. Babcock, for defendant appellants.*

McCULLOUGH, Judge.

Defendant appeals from an opinion and award of the North Carolina Industrial Commission ("the Commission"), awarding temporary total disability benefits to plaintiff under the Workers' Compensation Act.

The evidence of record and the Commission's findings of fact reflect that plaintiff began working for defendant Lowe's Home Improvement on 5 May 2001 as a receiver in its Kernersville, North Carolina store. Plaintiff's job duties included unloading shipments of major appliances, windows, doors, and carpeting, as well as stocking this merchandise on the store's sales floor. As one of three employees responsible for unloading "[t]wenty trailer loads of merchandise" each day, plaintiff "went home on many occasions with a backache and other muscle soreness." Plaintiff also had "some residual" pain in his lower back and left leg resulting from a motor vehicle accident in May of 1988.

While lifting a large roll of carpet at work on 19 October 2001, plaintiff felt a pull in his lower back and left leg. He experienced soreness and cramping in the back of his leg above the knee and informed his supervisor about the incident but continued working. Plaintiff sought treatment at Piedmont Triad Family Medicine ("Piedmont Triad") on 19 October 2001, complaining of pain in the outside and back of his left thigh. Based upon the localized nature of plaintiff's pain, the tightness in the back of his leg, and the absence of pain in his lower back during straight leg raise test, Physician Assistant W. Scott Boyd diagnosed a strained left bicep femoralis muscle, or hamstring. He recommended treatment with moist heat, an anti-inflammatory and a muscle relaxant. Plaintiff returned to

Piedmont Triad on 22 October 2001, reporting continued localized pain in his left hamstring. Boyd again found that plaintiff had tightness and spasming in the back of his leg, but retained full range of motion in his left hip and his back. Boyd continued plaintiff on medication for the strained muscle but noted the possibility of an "underlying sciatic nerve problem" originating in his lumbar spine. Piedmont Triad's Physician Assistant Betsy Brais examined plaintiff for his persistent symptoms on 31 October 2001. Plaintiff told Brais that his hamstring "really bothers him when he gets up in the morning," but improved "once he starts walking around for two hours or so." He further reported "no numbness or tingling radiating down the backs of his legs." Brais diagnosed a left hamstring muscle spasm.

On the afternoon of 9 November 2001, defendant was unloading a shipment of house windows at work when he felt a pop in his "lower left hip area." Accustomed to a certain amount of soreness from the demands of his job, plaintiff finished working for the day and took a hot shower when he got home. He went to bed early but was awakened at 4:00 a.m. by "radiating sharp stabbing burning pain" in his left hip and groin. Plaintiff testified that "the problem after November 9th was completely different" than what he experienced during October. He contrasted the two injuries as follows:

> Well, it was like a cramp in October. And the pain in November was sharp stabbing—sharp stabbing burning pain radiating down my leg. And that's the most pain I've ever had . . . , and it just kept continuously, continuously hurting . . . and not going away.

Plaintiff described the pain he experienced after 9 November 2001 as "ten times as much pain . . . as I've ever had in my leg or anything else at any[]time."

Later that morning, plaintiff went to Lowe's, filled out an accident report and spoke to his manager, who sent him to PrimeCare of Kernersville for treatment. A physician assistant diagnosed plaintiff with a hamstring injury and restricted him to light duty work. Plaintiff was released by PrimeCare to return to his normal work duties on 20 November 2001, but was unable to perform them and stopped working altogether on 28 November 2001. Because his condition had not improved, plaintiff sought a referral to a specialist. Orthopaedist Dr. Christopher J. Bashore of High Point Orthopaedic and Sports Medicine examined plaintiff on 14 December 2001. Dr. Bashore ordered x-rays of plaintiff's lower back, which revealed a loss of normal lumbar lordosis. Plaintiff also exhibited, *inter alia*, a reduced

range of motion when bending at the waist and "positive straight leg raise at 35 degrees on left with pain that radiates past the knee." Diagnosing low back pain with radicular leg pain and a possible herniated nucleus pulposis, Dr. Bashore ordered a lumbar MRI exam. The MRI revealed "a left lateral disk bulge at L4-5 with impingement on the L4 nerve root, and a centralized disk bulge at L5-S1 with posterior displacement of the S1 nerve root on the left[,]" consistent with plaintiff's symptoms. On 7 January 2002, Dr. Bashore referred plaintiff to neurosurgeon Dr. Russell H. Amundson of Johnson Neurological Associates.

Dr. Amundson examined plaintiff on 24 January 2002, and made an initial diagnosis of "lumbar disk bulge[.]" A review of plaintiff's x-rays and MRI confirmed the presence of "a significant bulging disk on the left at [L]4-5[.]" After further tests, Dr. Amundson prescribed an initial treatment regimen of medication and physical therapy. When physical therapy proved unsuccessful, Dr. Amundson recommended surgery and performed a left lumbar microdiskectomy at L4-5 on 21 May 2002.

Plaintiff applied for workers' compensation benefits for the herniated disk, which he alleged was caused by the accident at work on 9 November 2001. Deputy Commissioner W. Bain Jones, Jr., held a hearing on the contested claim on 29 January 2003. In an opinion and award filed 25 June 2003, the Deputy Commissioner concluded that plaintiff's herniated disk was a "compensable injury by accident arising out of and in the course of his employment with defendant-employer" on 9 November 2001. He awarded plaintiff temporary total disability benefits from 28 November 2001 until further order of the Commission.

Defendant appealed to the Full Commission, which affirmed the Deputy Commissioner's award with modifications. In finding a causal relationship between plaintiff's 9 November 2001 accident while unloading windows for defendant and his herniated disk, the Commission relied upon Dr. Amundson's deposition testimony as well as plaintiff's hearing testimony in which he recounted the nature and course of his symptoms. In pertinent part, the Commission found as follows:

> 22. . . . Dr. Amundson opined, and the Full Commission finds as fact, that the November 9, 2001, incident when plaintiff was lifting the wooden windows was a proximate cause of the lumbar disc rupture for which he performed surgery. Dr. Amundson indi-

cated the distinct symptoms relayed by plaintiff following November 9, 2001, were not present prior to that date. Prior to November 9, 2001, plaintiff was suffering from a muscle strain and not a ruptured disc.

23. Dr. Amundson . . . gave a lengthy explanation of why he believes (1) plaintiff had pre-existing degenerative changes in his spine; (2) plaintiff was being treated for a hamstring or muscular strain prior to November 9, 2001; and (3) plaintiff's actions in lifting windows was a sufficient incident to cause plaintiff's disk herniation. The Full Commission finds as fact the three foregoing beliefs of Dr. Amundson.

. . . .

25. After reviewing the plaintiff's prior medical history, including the histories given by plaintiff to his family physician and to PrimeCare, Dr. Amundson concluded, and the Full Commission finds as fact, that the lumbar disc rupture for which he performed surgery was a proximate result of the November 9, 2001, incident when plaintiff was lifting wooden windows. Dr. Amundson explained that leg pain is a very gross description of a symptom and can confuse the practitioner, but in the end, plaintiff's overall presentation of symptoms to him on January 24, 2002, were not the same as the presentation of symptoms relayed to Triad Family Medicine in October 2001. Dr. Amundson indicated that the distinct symptoms relayed by plaintiff following November 9, 2001, were not present prior to that date. Prior to November 9, 2001, plaintiff was most likely suffering from a muscle strain. Dr. Amundson's testimony is supported by the evidence indicating that (1) plaintiff's symptoms were relieved by activity at work; (2) the burning and tightness in the posterior part of his hamstring got worse when he was resting; (3) plaintiff had a negative straight leg raise; and (4) plaintiff had full range of motion in his back. When Dr. Amundson examined plaintiff on January 24, 2002, plaintiff had a limited range of motion of his back, radiating leg pain, and could not get relief from his symptoms, particularly when active.

Based upon its findings, the Commission concluded that plaintiff was entitled to temporary total disability benefits of $254.71 per week "from 28 November 2001, and continuing until he is able to earn wages or further order of the Industrial Commission." Defendant filed timely notice of appeal.

Defendant argues on appeal that "there is no competent evidence to support a finding that plaintiff's back injury was caused by the alleged November 9, 2001 incident." Defendant challenges Dr. Amundson's opinion testimony as the product of an incomplete picture of plaintiff's medical history and as based solely on the temporal relationship between the 9 November 2001 incident and the onset of plaintiff's symptoms at some point thereafter. Defendant further faults the Commission for placing the burden upon it to disprove causation.

The scope of our review of a workers' compensation award is limited to a determination of "(1) whether the Commission's findings of fact are supported by any competent evidence in the record; and (2) whether the Commission's findings justify its conclusions of law." *Goff v. Foster Forbes Glass Div.*, 140 N.C. App. 130, 132-33, 535 S.E.2d 602, 604 (2000). The appellate court " 'does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding.' " *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)), *reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999). Moreover, we must defer to the Commission as the "sole judge of the weight and credibility" of the parties' evidence. *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000).

In order to establish that a disabling injury is compensable within the workers' compensation system, a plaintiff must prove that a work-related accident was "a causal factor" of the injury. *Holley v. ACTS, Inc.*, 357 N.C. 228, 232, 581 S.E.2d 750, 752 (2003). Our courts have further defined a workers' compensation plaintiff's evidentiary burden by holding that, "[w]hen dealing with a complicated medical question . . ., expert medical testimony is necessary to provide a proper foundation for the Commission's findings." *Id.* at 234, 581 S.E.2d at 754. Inasmuch as " '[o]ne of the most difficult problems in legal medicine is the determination of the relationship between an injury or a specific episode and rupture of the intervertebral disc[,]' " the nature of plaintiff's claim required him to adduce expert medical testimony regarding the etiology of his disk injury. *Gillikin v. Burbage*, 263 N.C. 317, 325, 139 S.E.2d 753, 760 (1965) (citation omitted).

To qualify as "competent evidence" of a causal relationship between a work-related accident and a disabling injury, the expert's testimony " 'must be such as to take the case out of the realm of conjecture and remote possibility, that is, there must be sufficient competent evidence tending to show a proximate causal relation.' " *Holley*, 357 N.C. at 232, 581 S.E.2d at 753 (quoting *Gilmore v. Hoke Cty. Bd. of Educ.*, 222 N.C. 358, 365, 23 S.E.2d 292, 296 (1942). Expert opinion "based merely upon speculation and conjecture" does not constitute competent evidence of causation in cases involving complex medical issues beyond the ken of laypersons. *Faison v. Allen Canning Co.*, 163 N.C. App. 755, 758, 594 S.E.2d 446, 449 (2004) (quoting *Holley*, 357 N.C. at 232, 581 S.E.2d at 753).

After a thorough review of the deposition transcripts, hearing testimony, and other evidence of record, we conclude the Commission's finding of causation is supported by competent evidence. The Commission's findings of fact accurately reflect the tenor of Dr. Amundson's testimony. Dr. Amundson opined to "a reasonable degree of medical certainty" that plaintiff's 9 November 2001 accident caused his herniated disk. He also offered a deliberative, three-part analysis establishing the basis of his opinion. *Cf. Edmonds v. Fresenius Med. Care*, 165 N.C. App. 811, 817, 600 S.E.2d 501, 505 (2004) (upholding finding of causation where the "evidence tending to show that [the expert's] testimony was the product of a reasoned medical analysis as opposed to mere speculation").

Dr. Amundson first posited, based upon plaintiff's medical records through October of 2001, that plaintiff "may well have had some degenerative disk changes" prior to 9 November 2001. He noted that plaintiff, "from [an examination on 19 October 2001], states that he has some history of some low back pain dating back—as far as 1990." He next evaluated the symptoms plaintiff presented at Piedmont Triad in October of 2001, which tended to show "a hamstring or a muscular strain" and further tended to rule out "a nerve root compression problem" or "a disk problem." Dr. Amundson contrasted these reported symptoms of localized muscular strain up through 31 October 2001, with the symptoms plaintiff presented to him after 9 November 2001, as follows:

When I saw him, you know, he had limitation in range of motion of his back; he had radiating leg pain; he had sensory alteration. You know, those things go along more with a disk abnormality, or at least the lumbar spine abnormality and a nerve root compression problem.

In the third stage of his analysis, Dr. Amundson assessed the potential causal relationship between plaintiff's 9 November 2001 incident at work and his herniated disk as follows:

> The patient tells me that, you know, he had presented for work, he developed back and leg pain, thereafter certainly lifting windows, twisting motion is a sufficient cause to cause a disk herniation. And the disk herniation would account for the patient's radiating leg pain and the sensory abnormality that he had.

Asked to clarify whether he had "an opinion to a reasonable degree of medical certainty as to whether the November 9th, 2001 incident, described to you by [plaintiff], caused or significantly aggravated any prior condition to the extent that he required the surgery, and other treatment you provided to him[,]" Dr. Amundson responded:

> I think I came close to answering that question earlier when I said, you know, I'm really relying on what the patient tells me. And I think the description of lifting windows is a sufficient cause to injure a disk, which will result in a disk herniation. So within— within that context I would say yes.

He further affirmed that nothing contained in plaintiff's medical records from Piedmont Triad "eliminates or contradicts the opinion that I gave[.]"

Nor was Dr. Amundson's opinion affected by his review of plaintiff's medical records following the 9 November 2001 incident. Presented by defendant's counsel with plaintiff's records from PrimeCare, Dr. Amundson testified, "So, if I wanted to put all of this together in a sensible manner, I'd say, you know, he had a pulled muscle back in October. He lifted the windows [on 9 November 2001]. He aggravated the preexisting hamstring injury, and caused his disk injury." When pressed by defendant's counsel, Dr. Amundson reiterated his position, as follows:

> Q. . . . [H]ow can you causally relate the herniated disk to November 9 of 2001[?]
>
> . . . .
>
> A. . . . I think if I want to put all of this together in a sensible way, . . . I would say he had a preexisting muscular problem. He describes injuring himself. The first thing that shows is the aggravation of that preexisting muscle injury. And at least by the time

HSI N.C., LLC v. DIVERSIFIED FIRE PROTECTION OF WILMINGTON, INC.

[169 N.C. App. 767 (2005)]

I see him, he now has persistent symptoms, and he's developed radiculopathy. You know, very often the disk herniation occurs and it takes a while for the radiculopathy to show itself. This may have been what caught his attention first.

While defendant dismisses Dr. Amundson's reasoning due to the similarity of the symptoms recorded at PrimeCare to those displayed by plaintiff at Piedmont Triad in October of 2001, we note in plaintiff's hearing testimony that his records from PrimeCare did not accurately reflect the type of pain he experienced after 9 November 2001, or his lack of improvement during the course of his treatment at PrimeCare. The Commission's opinion and award includes a finding of fact that plaintiff's testimony regarding his medical history was credible. The Commission's credibility determination is unreviewable and binding on appeal. Likewise, Dr. Amundson was entitled to credit his patient's account of his own pain symptoms in formulating his expert opinion.

Having found competent evidence to support the Commission's finding of causation, we affirm its award of benefits to plaintiff.

Affirmed.

Chief Judge MARTIN and Judge CALABRIA concur.