MERRION CARR, EMPLOYEE, PLAINTIFF v. DEPARTMENT OF HEALTH AND HUMAN SERVICES (CASWELL CENTER), EMPLOYER, SELF-INSURED (CORVEL CORPORATION, THIRD-PARTY ADMINISTRATOR), DEFENDANT

No. COA11-789

(Filed 17 January 2012)

### 1. Workers' Compensation—injury—neck injury caused by hand injury

The Industrial Commission did not err in a workers' compensation case by concluding plaintiff's cervical spine injury was caused, exacerbated, or aggravated by her 5 May 2008 left hand injury.

### 2. Workers' Compensation—disability—unable to earn wages— Russell method

The Industrial Commission erred in a workers' compensation case by concluding plaintiff was unable to earn wages and was entitled to disability benefits. The case was remanded for further findings regarding disability with regard to methods two and three in *Russell*, 108 N.C. App. 762.

Appeal by defendant from Opinion and Award entered 29 March 2011 by the North Carolina Industrial Commission. Heard in the Court of Appeals 14 November 2011.

*The Law Offices of James Scott Farrin, by Douglas E. Berger, for plaintiff-appellee.*

*Roy Cooper, Attorney General, by Lora C. Cubbage, Assistant Attorney General, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant-employer, Caswell Development Center/Department of Health and Human Services ("defendant"), appeals from an Opinion and Award by the North Carolina Industrial Commission ("the Commission") awarding plaintiff-employee, Merrion Carr, temporary total disability compensation and past and future medical expenses related to her workers' compensation claim. After careful consideration, we affirm in part and remand in part.

On 5 May 2008, plaintiff, a licensed practical nurse, was standing at a medicine cart at work when she was hit from behind by a patient operating his wheelchair in reverse. A drawer closed on her left hand, her elbow went up and twisted, and her head moved forward and then backward about six or seven inches. That evening, plaintiff went to Lenoir Memorial Hospital complaining of pain in her left hand, where she was x-rayed, diagnosed with a contusion, and released.

Two days later, plaintiff presented to Dr. Max Kasselt, an orthopedic surgeon, complaining of wrist, left middle finger, and neck pain which radiated down her shoulder into her left hand. Dr. Kasselt ordered radiographs of the cervical and lumbar spine, left wrist, and left middle finger, all of which were unremarkable. Plaintiff, however, continued to have pain, and returned to see Dr. Kasselt again on 16 June 2008, complaining of left wrist and middle finger pain, frontal headaches, and neck pain. Although Dr. Kasselt first suspected plaintiff was a malingerer when he could not find an explanation for her neck symptoms, he reconsidered and opined that plaintiff could have a herniated disk at C6-7. He referred plaintiff to Raleigh Hand Center for a second opinion. An MRI taken of plaintiff's cervical spine revealed a prominent, left greater than right, C6-7 subligamentous disc herniation with some cord impingement, spinal stenosis and minor disc herniations at the C3 to C6 levels.

Plaintiff went to see Dr. Barry Katz, a neurosurgeon, on 16 July 2008 for an evaluation of her neck pain. Dr. Katz diagnosed plaintiff with significant cervical radiculopathy and discussed treatment options with plaintiff. Plaintiff elected to have surgery, and underwent a C6-7 anterior cervical discectomy and fusion procedure on 25 July 2008. Plaintiff continued to have some neck pain, which Dr. Katz opined was normal. Dr. Katz followed up with plaintiff several times after surgery, and ultimately released her to return to work on 3 November 2008 with the restriction of no lifting greater than ten pounds.

Plaintiff informed defendant she could return to work, but with a ten-pound lifting restriction. Defendant did not make a job available to plaintiff within her restriction, and instead directed her to sign up for short-term disability, which she did.

Plaintiff simultaneously continued to undergo treatment for her left hand with Dr. Paul Schricker of the Raleigh Hand Center. He diagnosed plaintiff with a contusion and sprain of the left long finger PIP joint and continued to treat plaintiff until 18 December 2008, when he determined she had reached maximum medical improvement. Dr. Schricker opined that plaintiff had a three percent (3%) permanent partial impairment of the left long finger.

Meanwhile, plaintiff had filed a Form 18 Notice of Accident to Employer on 2 October 2008 citing injuries to her "left hand/upper extremity, neck/back, hips/lower extremities." Defendant filed a Form 60 accepting plaintiff's claim with regard to the left hand injury, but simultaneously filed a Form 61 denying plaintiff's claim as to her other injuries. Plaintiff requested a hearing and the matter was assigned to a deputy commissioner and scheduled for hearing on 15 December 2009. In an Opinion and Award filed on 11 June 2010, the deputy commissioner concluded that, although plaintiff sustained a compensable injury to her left hand and had a resulting 3% impairment of her left middle finger, she failed to meet her burden of proving her neck injury and subsequent disability was causally related to her compensable injury.

Plaintiff then appealed to the Full Commission regarding her neck condition. The Full Commission found, *inter alia:*

> 14. Dr. Katz opined the events of May 5, 2008 could have caused plaintiff's neck symptoms and could have aggravated a pre-existing condition. Dr. Katz further opined that if plaintiff's neck moved as she described in her testimony, it could cause the symptoms she described, if she had stenosis or a herniated disc prior and could get worse.
>
> . . . .
>
> 16. The Full Commission finds that there is sufficient medical evidence of record upon which to find that plaintiff's cervical spine condition was caused, exacerbated, or aggravated by her May 5, 2008 injury and that the medical treatment plaintiff received, including the C6-7 anterior discectomy and fusion, was necessary . . . .

. . . .

23. The Full Commission finds that the medical evidence of record, including the deposition testimony of Dr. Katz, establishes that, as a result of the May 5, 2008 work related incident, plaintiff has been disabled and unable to earn any wages since the date of injury and continuing.

The Commission concluded that, because defendant accepted the left hand injury as compensable by filing a Form 60, a rebuttable presumption arose that any subsequent treatment is directly related to plaintiff's compensable injury. The Commission concluded defendant had not rebutted the presumption that the subsequent treatment was directly related to the compensable injury, and that, therefore, plaintiff is entitled to receive past and future medical expenses. The Commission also concluded plaintiff is entitled to continue to receive temporary total disability related to her neck injury. Defendant appeals.

At issue on appeal are the Commission's conclusions that (I) plaintiff's cervical spine injury was causally related to her compensable left hand injury and (II) plaintiff is unable to earn wages and is therefore entitled to disability benefits.

I.

[1] Defendant first contends the Commission erred in concluding plaintiff's cervical spine injury was caused, exacerbated, or aggravated by her 5 May 2008 left hand injury.

Review of an opinion and award of the Industrial Commission "is limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law. This '[c]ourt's duty goes no further than to determine whether the record contains any evidence tending to support the finding.'" *Richardson v. Maxim Healthcare/Allegis Grp.*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008) (citation omitted) (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)). "The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Anderson*, 265 N.C. at 433-34, 144 S.E.2d at 274. Where the exact nature and probable genesis of an injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent evidence as to causation. *Click v. Pilot Freight Carriers, Inc.*, 300 N.C. 164, 167, 265 S.E.2d 389, 291 (1980). When expert opinion is based "merely

upon speculation and conjecture," it cannot qualify as competent evidence of medical causation. *Young v. Hickory Bus. Furniture*, 353 N.C. 227, 230, 538 S.E.2d 912, 915 (2000). Stating an accident "could or might" have caused an injury, or "possibly" caused it is not generally enough alone to prove medical causation; however, supplementing that opinion with statements that something "more than likely" caused an injury or that the witness is satisfied to a "reasonable degree of medical certainty" has been considered sufficient. *See, e.g., Young*, 353 N.C. at 233, 538 S.E.2d at 916; *Kelly v. Duke Univ.*, 190 N.C. App. 733, 740, 661 S.E.2d 745, 749, *supersedeas denied, disc. rev. denied*, 363 N.C. 128, 675 S.E.2d 367 (2008).

In the instant case, the Commission determined the record contained competent evidence of a causal connection between the left hand injury and neck injury. Dr. Katz opined that the mechanism of injury described by plaintiff, her neck moving forward and back during her fall, "theoretically could" have caused the cervical spine injury. He also stated, in response to the question of whether the mechanism is consistent with aggravation of the condition he surgically treated, that:

> [T]heoretically, if your neck moves in this sort of direction, and it was, you know, from an accident, theoretically, you can cause, you know, symptoms like she was describing if she had stenosis or a herniated disc prior. And theoretically it could get a little bit worse with this kind of mechanism.

Dr. Katz went on to clarify that his opinion was "satisfactory to [himself]" and, assuming plaintiff had no symptoms and the incident occurred as she said it did, that he believed the fall "more likely than not" caused the neck injury. Furthermore, there is independent corroboration for Dr. Katz's opinion. Plaintiff complained of neck pain to Dr. Kasselt only two days after her injury. Although he initially believed her to be a "malingerer," he noted that the tenderness in her left middle finger could be a symptom of a C6-7 herniation, and recommended she get an MRI of the cervical spine. This MRI was done and confirmed Dr. Kasselt's suspicions of a C6-7 herniation, which Dr. Katz later surgically corrected.

Though Dr. Katz admitted on cross-examination that herniated discs can be spontaneous in nature, he clarified that the condition could be ongoing for a period of years based on deterioration, but then suddenly become worse. That statement, in and of itself, does not render Dr. Katz's testimony "mere speculation."

Defendant further contends Dr. Katz's testimony was based solely on the fallacy of *post hoc ergo propter hoc*, or, confusing sequence with consequence, and therefore, cannot be the basis for causation. "[W]here the threshold question is the cause of a controversial medical condition, the maxim of *'post hoc, ergo propter hoc,'* is not competent evidence of causation." *Young*, 353 N.C. at 232, 538 S.E.2d at 916. Dr. Katz's opinion, however, was based on more than merely the sequence of events. In his deposition, Dr. Katz stated that although "a lot of it is based on timing," his opinion was based on the mechanism of injury as well as the temporal relationship between the incident and symptoms. The Commission recognized this, and stated in Finding of Fact 14 that Dr. Katz opined, "if plaintiff's neck moved as she described in her testimony, it could cause the symptoms she described." Therefore, there is no merit to defendant's contention.

Defendant also argues that in finding the neck injury compensable, the Commission improperly applied this Court's holdings in *Parsons v. Pantry, Inc.*, 126 N.C. App. 540, 485 S.E.2d 867 (1997), and *Perez v. American Airlines/AMR Corp.*, 174 N.C. App. 128, 620 S.E.2d 288 (2005). *Parsons* established plaintiffs only need to prove causation at the initial hearing; thereafter, a rebuttable presumption arises that additional medical treatment is related to the prior injury, and defendant must prove the present injury is unrelated to the compensable injury. *Parsons*, 126 N.C. App. at 542, 485 S.E.2d at 869. In *Perez*, this Court found acceptance of a workers' compensation claim by a Form 60 gives rise to the *Parsons* rebuttable presumption. *Perez*, 174 N.C. App. at 136, 620 S.E.2d at 293. Defendant argues the *Parsons* presumption does not apply when plaintiff's injury is a wholly different injury from the one accepted on the Form 60. We disagree.

In the instant case, defendant filed a Form 60 on 2 October 2008 accepting the left hand injury as compensable. Although the Commission recited the *Parsons* presumption, it did not rely on it in finding the neck injury compensable. The Commission evaluated the medical evidence, including the testimony of Dr. Katz, and stated in Finding of Fact 16 that the neck injury was causally related to the 5 May 2008 injury. Therefore, regardless of the presumption, plaintiff proved the neck injury was causally related to the left hand injury and was therefore compensable.

## II.

**[2]** Defendant next contends the Commission erred in concluding plaintiff has been unable to earn wages and is entitled to disability

benefits. After close consideration, we must agree and remand this case to the Commission for further findings with respect to the issue.

Under N.C.G.S. § 97-2(9), " 'disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2011). The burden is on the employee to show she is unable to earn the same wages she earned before the injury, either in the same or other employment. *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). The employee may meet this burden by producing evidence that she is: (1) physically or mentally, as a consequence of the work-related injury, incapable of work in any employment; (2) capable of some work, but that she has, after a reasonable effort on her part, been unsuccessful in her effort to obtain employment; (3) capable of some work but that it would be futile to seek other employment because of preexisting conditions; or (4) she has obtained other employment at a wage less than that earned prior to the injury. *Russell v. Lowes Prod. Distrib.*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). To meet the requirements of the first method of proof in *Russell*, plaintiff must present medical evidence that she is incapable of *work in any employment. Britt v. Gator Wood, Inc.*, 185 N.C. App. 677, 684, 648 S.E.2d 917, 922 (2007). If the findings of fact show plaintiff is capable of performing some work, and there is evidence plaintiff may have satisfied the second or third prong of *Russell*, the Commission must make findings addressing those methods of proof. *Id.*

Here, medical evidence shows plaintiff underwent a functional capacity evaluation at Goldsboro Orthopaedics Associates and was found to score in the twenty-eighth percentile (28%) on the neck disability index, which can be characterized as moderate disability. Based on the evaluation, it was recommended that plaintiff seek employment in the sedentary work category, where she would not need to lift greater than ten pounds. The position description given by the North Carolina Office of State Personnel states plaintiff's job requires her to be on her feet seventy-five percent (75%) of the time. Thus, medical evidence suggests plaintiff is no longer capable of performing her previous position. However, medical evidence does not show plaintiff is incapable of working in any employment, so the Commission's finding regarding disability cannot be based on the first *Russell* prong.

For the Commission's conclusion to be based on the second or third prong of *Russell*, it would have to make findings regarding plain-

tiff's disability; i.e., whether plaintiff has made a reasonable effort to obtain employment, but been unsuccessful, or that it would be futile for plaintiff to seek work because of preexisting conditions. The Commission merely stated "that the medical evidence of record, including the deposition testimony of Dr. Katz, establishes that, as a result of the May 5, 2008 work related incident, plaintiff has been disabled and unable to earn any wages since the date of injury and continuing." Although plaintiff has testified that she availed herself to defendant and they did not accommodate her with a sedentary job, the Commission made no findings which acknowledged this or concluded that her actions constituted a reasonable effort to obtain employment. Thus, there is no basis in its findings for the conclusion that plaintiff is disabled based on either the second or third prong of *Russell*. Furthermore, the Commission's conclusion cannot be based on the fourth prong, since plaintiff had not, at the time of the hearing, obtained other employment. Therefore, we must remand to the Commission to make findings regarding plaintiff's disability with regard to *Russell* methods two and three.

Affirmed in part; remanded in part.

Judges ELMORE and STEPHENS concur.