An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-821
NORTH CAROLINA COURT OF APPEALS

Filed:  17 March 2015


JAMES WILLIAMS,
     Employee,
     Plaintiff

     v.                                  The North Carolina Industrial
                                      Commission
                                      I.C. No. X68962
BEST CARTAGE, INC.,
     Employer,

and

NATIONAL INTERSTATE INSURANCE CO.,
     Carrier,
     Defendants.


Appeal by defendants from Opinion and Award entered 27 May 2014 by the North Carolina Industrial Commission.  Heard in the Court of Appeals 3 December 2014.


*The Deuterman Law Group, by Jeffrey P. Lewis, for plaintiff.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by Ben S. Greenberg and William A. Bulfer, for defendants.*


DAVIS, Judge.

Best Cartage, Inc. ("Best Cartage") and National Interstate Insurance Co. (collectively "Defendants") appeal from the Opinion and Award of the North Carolina Industrial Commission ("the Commission") awarding James Williams ("Plaintiff") workers' compensation benefits with respect to his left knee injury. On appeal, Defendants contend that the Commission erred in (1) failing to specifically determine the reason for Plaintiff's fall; and (2) concluding that Plaintiff's left knee injury was causally related to his work-related accident and, therefore, compensable. After careful review, we affirm the Commission's Opinion and Award.

## Factual Background

Plaintiff was employed as a long-haul semi-truck driver for Best Cartage. At approximately 6:00 a.m. on 4 October 2011, Plaintiff parked his truck on an unpaved portion of the parking lot of a Huddle House restaurant in Bishopville, South Carolina, intending to have breakfast there. As he opened the driver's side door and began to exit the cab, Plaintiff's left foot "unexpectedly landed in a hole or on some loose gravel," and his left knee twisted. Plaintiff then fell to his right toward the truck and also twisted his right knee. He felt immediate pain in both knees with the pain in his left knee being more acute. Later that day, Plaintiff returned to Best Cartage's base office in Kernersville, North Carolina and reported the incident.

On the following day, Best Cartage sent Plaintiff to PrimeCare in Kernersville for a medical examination. At PrimeCare, Plaintiff was treated by Dr. Camille Andy ("Dr. Andy") who diagnosed him with a "left medial knee sprain and degenerative joint disease, and right knee pain."

On 17 October 2011, Plaintiff filed a Form 18 "Notice of Accident to Employer and Claim of Employee." On 26 October 2011, Defendants responded by submitting a Form 61 "Denial of Workers' Compensation Claim." On 31 October 2011, Plaintiff moved to have his claim assigned for hearing.

On 14 December 2011, Plaintiff saw Dr. Scott Dean ("Dr. Dean"), an orthopedist, regarding his left knee pain. Dr. Dean recommended that Plaintiff undergo a total knee replacement of the left knee. Dr. Dean performed left total knee replacement surgery on Plaintiff on 13 March 2012. During his deposition, Dr. Dean testified to a reasonable degree of medical certainty that Plaintiff's left knee injury was causally related to his 4 October 2011 accident.

The matter was heard before Deputy Commissioner Robert J. Harris on 12 March 2013. Deputy Commissioner Harris filed an opinion and award on 28 August 2013, finding that Plaintiff's left knee injury was causally related to the 4 October 2011 incident. He determined that Plaintiff was therefore entitled to all medical expenses incurred, or to be incurred, as a result of the injury.

Defendants appealed to the Full Commission. On 27 May 2014, the Commission issued an Opinion and Award affirming Deputy Commissioner Harris's opinion and award and concluding, in pertinent part, as follows:

> Plaintiff sustained a compensable injury by accident to his left knee arising out of and in the course of his employment with defendant-employer upon the occurrence of the 4 October 2011 incident, which injury caused a compensable exacerbation of plaintiff's pre-existing left knee arthritis condition.

Defendants filed a timely notice of appeal to this Court.

**Analysis**

Our review of an opinion and award by the Commission is "limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law." *Richardson v. Maxim Healthcare/Allegis Grp.*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008). The Commission's findings of fact are conclusive on appeal if supported by competent evidence even if there is evidence to support contrary findings. *Avery v. Phelps Chevrolet*, 176 N.C. App. 347, 353, 626 S.E.2d 690, 694 (2006). On appeal, this Court will not "weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Smith v. Champion Int'l*, 134 N.C. App. 180, 182, 517

S.E.2d 164, 166 (1999) (citation and internal quotation marks omitted).

## I. Nature of Accident

In their first argument on appeal, Defendants challenge the Commission's finding of fact 11, which states as follows:

> Plaintiff did acknowledge that, as a truck driver he would have to expect to step down onto different surfaces, such as pavement, sand or gravel, when getting out of his truck. Plaintiff also acknowledged that he was not sure exactly what his left foot had stepped on or in when this incident occurred. However, the Commission finds that the incident was an unexpected departure from plaintiff's usual work routine *and/or* was an unexplained fall. The Commission finds that the circumstances of plaintiff's injury on 4 October 2011 constituted an interruption of his normal work routine and the introduction thereby of unusual circumstances likely to result in unusual results *and/or* was an unexplained fall. As such, on 4 October 2011, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.

(Emphasis added.)

Defendants take issue with the Commission's use of the term "and/or," asserting that the Commission "has not made specific findings as to the crucial facts that are required for a determination of whether Plaintiff is entitled to Compensation." They further contend that the Commission's "refusal to make a specific determination with regard to this crucial fact falls short of its judicial obligations and warrants reversal or, in the

alternative, remand for a determination as to whether Plaintiff's alleged injury constituted an interruption of his normal work routine due to what he stepped down on or an unexplained fall."

It is well established that "[u]nder the Workers' Compensation Act, an injury is compensable if the claimant proves three elements: (1) that the injury was caused by an accident; (2) that the injury was sustained in the course of the employment; and (3) that the injury arose out of the employment." *Philbeck v. Univ. of Michigan*, __ N.C. App. __, __, 761 S.E.2d 668, 671 (2014) (citation and internal quotation marks omitted).

As an initial matter, we take this opportunity to note our disapproval of the Commission's use of the term "and/or." *See Gibson v. Cent. Mfrs. Mut. Ins. Co.*, 232 N.C. 712, 717, 62 S.E.2d 320, 323 (1950) ("[T]he Court has inferentially condemned the use of the term 'and/or' in statutes, and in verdicts in judicial proceedings. Moreover, the annotators of reported cases, and the text writers indicate that much has been written in condemnation of the term 'and/or.' It is declared, in effect, that the courts generally hold that the term 'and/or' has no place in judicial proceedings, pleadings, verdict or judgment." (citation omitted)); *Gordon v. State Farm Mut. Auto. Ins. Co.*, 6 N.C. App. 185, 188, 169 S.E.2d 514, 516 (1969) ("We do not look with favor upon the ambiguous and uncertain term 'and/or.'" (citation and internal quotation marks omitted)).

Here, the Commission's use of the term "and/or" compels us to read the provisions of finding of fact 11 containing this term in both the conjunctive and the disjunctive. *See State ex rel. N.C. Utils. Comm'n v. McKinnon*, 254 N.C. 1, 13, 118 S.E.2d 134, 143 (1961) (explaining that the "oft condemned and ambiguous term 'and/or' . . . contains both the conjunctive 'and' and the disjunctive 'or.'"). Therefore, under this construction, we read finding of fact 11 as a determination by the Commission that Plaintiff's injury was the result of (1) an unexpected departure from Plaintiff's usual work routine; (2) an unexplained fall; or (3) both an unexpected departure from Plaintiff's usual work routine and an unexplained fall. *See Local Div. 589, Amalgamated Transit Union, AFL-CIO, CLC v. Com. of Mass.*, 666 F.2d 618, 627 (1st Cir. 1981) ("[T]he words 'and/or' commonly mean 'the one or the other or both.'"), *cert. denied*, 457 U.S. 1117, 73 L.Ed.2d 1329 (1982).

Significantly, Defendants do not argue that there is no competent evidence in the record to support either of these two theories of compensability. Rather, they simply argue that the Commission was required to identify a single cause of Plaintiff's injury and make a finding to that effect in its Opinion and Award. However, Defendants have failed to cite any caselaw specifically supporting their argument that the Commission's failure to do so requires a remand. As such, while we agree that the far better

practice would have been for the Commission to make a finding as to one specific cause of Plaintiff's injury, we cannot hold that its failure to do so on these facts constituted reversible error unless one or both of the two theories identified by the Commission are insufficient to establish compensability under the Act. Therefore, we must address each of the two theories set out in finding of fact 11.

It is well settled that an unexpected departure from an employee's normal work routine arising out of and in the course and scope of his employment resulting in injury represents one theory of compensability under the Act.

> The terms "accident" and "injury" are separate and distinct concepts, and there must be an "accident" that produces the complained-of "injury" in order for the injury to be compensable. An "accident" is an "unlooked for event" and implies a result produced by a "fortuitous cause." If an employee is injured while carrying on the employee's usual tasks in the usual way the injury does not arise by accident. In contrast, when an interruption of the employee's normal work routine occurs, introducing unusual conditions likely to result in unexpected consequences, an accidental cause will be inferred. The "essence" of an accident is its "unusualness and unexpectedness."
>
> Thus, in order to be a compensable "injury by accident," the injury must involve more than the employee's performance of his or her usual and customary duties in the usual way.

*Gray v. RDU Airport Auth.*, 203 N.C. App. 521, 525-26, 692 S.E.2d 170, 174 (2010) (internal citations, quotation marks, brackets, and ellipses omitted).

However, this Court has held that if an employee's injury is caused by a fall occurring during the course and scope of his employment "[i]t is not essential that there be evidence of any unusual or untoward condition or occurrence causing [the] fall which produces injury. *The fall itself is the unusual, unforeseen occurrence which is the accident*. A fall is usually regarded as an accident. . . . [A]n injury that is the result of a fall, which itself stems from an event that results from both the employee's normal work routine and normal conditions, may still constitute an 'accident.'" *Hedges v. Wake Cty. Pub. Sch. Sys.*, 206 N.C. App. 732, 735, 699 S.E.2d 124, 126 (2010) (emphasis added), *disc. review denied*, 365 N.C. 77, 705 S.E.2d 746 (2011).

In addition, a second but related theory of compensability under the Act is that of the unexplained fall.

> In a workers' compensation case, if the cause or origin of a fall is unknown or undisclosed by the evidence, we apply case law unique to unexplained fall cases. When a fall is unexplained, and the Commission has made no finding that any force or condition independent of the employment caused the fall, then an inference arises that the fall arose out of the employment. This inference is permitted because when the cause of the fall is unexplained such that there is no finding that any force or condition independent of the employment caused or contributed to the

>accident, the only active force involved is the employee's exertions in the performance of his duties.

*Philbeck*, __ N.C. App. at __, 761 S.E.2d at 672 (internal citations, quotation marks, brackets, and ellipses omitted).

Thus, while finding of fact 11 is hardly a model of clarity, the Commission determined that the evidence supported one or both of two recognized theories of compensability. Therefore, we conclude that remand is not necessary.

## II. Causal Relationship

Defendants next contend that insufficient evidence was introduced to support the Commission's determination that Plaintiff's left knee injury was causally related to his 4 October 2011 accident. Defendants contend that Dr. Dean's opinion on causation was (1) impermissibly speculative; and (2) based upon the logical fallacy of *post hoc, ergo propter hoc*. We address each of these arguments in turn.

### A. Causation Testimony of Dr. Dean

When the Commission relies on expert medical testimony, the expert's testimony "must be such as to take the case out of the realm of conjecture and remote possibility" in order to constitute competent evidence of a causal relationship between the work-related accident and the injury. *Rogers v. Lowe's Home Improvement*, 169 N.C. App. 759, 765, 612 S.E.2d 143, 147 (2005) (citation and internal quotation marks omitted). A medical expert

[s]tating an accident "could or might" have caused an injury, or "possibly" caused it is not generally enough alone to prove medical causation; however, supplementing that opinion with statements that something "more than likely" caused an injury or that the witness is satisfied to a "reasonable degree of medical certainty" has been considered sufficient.

*Carr v. Dep't of Health & Human Servs.*, 218 N.C. App. 151, 155, 720 S.E.2d 869, 873 (2012).

Defendants contend that no competent evidence existed to support the Commission's findings of fact 5, 21, 25, and 26. These findings state as follows:

5. Long before the 4 October 2011 incident that is the basis of this claim, plaintiff had bilateral degenerative joint disease in both of his knees. His bilateral knee condition had been diagnosed as end-stage, bone-on-bone osteoarthritis. Plaintiff had undergone a right-sided total knee replacement in about 2004. However, since starting with defendant-employer in 2007, he had been able to do his job without difficulty.

21. As Dr. Dean confirmed in his testimony, he believed that the 4 October 2011 incident exacerbated plaintiff's pre-existing left knee arthritis condition. As Dr. Dean testified, the 4 October 2011 incident was the straw that broke the camel's back for plaintiff's left knee condition and sent it on a downward spiral to the total knee replacement. Dr. Dean provided this causation opinion taking into account plaintiff's history, plaintiff's prior complaints in 2009 of left knee pain, his own objective findings, and his experience gained through 20 years of practice in sports medicine. As Dr. Dean noted, he had seen minimal trauma cause this scenario before.

25. The medical treatment that plaintiff has received for his left knee condition since 4 October 2011 has been reasonably required to effect a cure, provide relief, and/or lessen the period of plaintiff's disability.

26. Further medical treatment for plaintiff's left knee condition is reasonably required to effect a cure and/or provide relief for his left knee condition.

Defendants further challenge the Commission's conclusions of law 1, 3, and 4:

1. Plaintiff sustained a compensable injury by accident to his left knee arising out of and in the course of his employment with defendant-employer upon the occurrence of the 4 October 2011 incident, which injury caused a compensable exacerbation of plaintiff's preexisting left knee arthritis condition. N.C. Gen. Stat. § 97-2(6); *Hedges v. Wake Cnty. Pub. Sch. Sys.*, 206 N.C. App. 732, 699 S.E.2d 124 (2010), *disc. rev. denied*, __ N.C. __, 705 S.E.2d 746 (2011).

3. Plaintiff is entitled to have defendants pay for the medical treatment that he has received for his compensable left knee condition since 4 October 2011, including, but not limited to, the diagnostic testing and imaging, injections, prescriptions, surgery, hospitalization, physical therapy and mileage that plaintiff underwent or incurred while under the care of Dr. G. Scott Dean. N.C. Gen. Stat. §§ 97-2(19) and 97-25.

4. Plaintiff is entitled to have Dr. G. Scott Dean designated as his treating physician in this claim and to have defendants authorize and pay for the treatment that Dr. Dean recommends for plaintiff's compensable left knee condition, including, but not limited to, diagnostic testing and imaging, physical therapy, pain management, prescriptions,

referrals and mileage. *Id*.

Defendants challenge the portion of finding of fact 5 stating that "since starting with defendant-employer in 2007, he had been able to do his job without difficulty," arguing that "[t]here is no evidence of record suggesting that Plaintiff had been able to do his job without difficulty since 2007." However, they do not challenge findings of fact 4, 12, and 19. Finding of fact 4 establishes that "Plaintiff started [work] with defendant-employer as a long-haul semi-truck driver in 2007." Finding of fact 12 states, in pertinent part, that one day after the accident, "Dr. Andy diagnosed [Plaintiff with] a left medial knee sprain and degenerative joint disease, and right knee pain. . . . [S]he wrote that plaintiff could return to sedentary work, with no lifting over five pounds, minimal walking and frequent position changes." Finding of fact 19 states that approximately nine to ten weeks later, "Dr. Dean restricted plaintiff to primarily sedentary-type activity."

Thus, Defendants do not dispute the fact that Plaintiff was hired in 2007 and had been working as a truck driver from that date until the 4 October 2011 injury. No evidence was presented that he was not able to do his job as a truck driver prior to 4 October 2011. Findings of fact 12 and 19 do establish, however, that beginning the day after his injury, Plaintiff was restricted by Dr. Andy from performing his normal duties as a truck driver

and again by Dr. Dean several weeks later. While Defendants point to the deposition testimony of Dr. Donna Gates for the purpose of showing that Plaintiff had complained of left knee pain on 25 November 2009 during a "wellness visit and a recheck of his chronic medical problems," this evidence does not suggest that Plaintiff was unable to perform his job duties prior to the 4 October 2011 accident.

Therefore, while it is clear that Plaintiff had degenerative joint disease in his left knee prior to the 4 October 2011 injury, competent evidence exists in the record that the 4 October 2011 incident aggravated his left knee condition, materially restricting his ability to work. We have consistently held that

> [a] work-related injury need not be the sole causative force to render an injury compensable. When a pre-existing, *non-disabling*, *non-job-related* condition is aggravated or accelerated by an accidental injury arising out of and in the course of employment so that disability results, then the employer must compensate the employee for the entire resulting disability. This "aggravation rule" does not bar recovery if there is evidence of a causal connection between a claimant's current disability and a prior condition. It also does not require that claimant suffer from new or different symptoms from those of which he previously complained; rather, the claimant must only demonstrate that his work-related injury contributed in some reasonable degree to the disability.

*Brafford v. Brafford's Const. Co.*, 125 N.C. App. 643, 646-47, 482
S.E.2d 34, 37 (1997) (internal citations, quotation marks, and
ellipses omitted).

Finding of fact 21 is supported by the testimony given by Dr.
Dean during his deposition.  Indeed, finding of fact 21 largely
tracks the following statements made by Dr. Dean:

> A. Again, it just — and I think I put this in
> the note that it's kind of like the fall, sort
> of, didn't necessarily cause the arthritis,
> but it sent him on the — it was the straw that
> broke the camel's back.  It sent him on the
> spiraling path downward, you know, as far as
> the — I have just seen that — I have seen that
> pattern before.
>
> . . . .
>
> Q. So the decision that that's the straw that
> breaks the camel's back, is because he's
> telling you that's when it started getting
> worse?
>
> A. Yes.
>
> . . . .
>
> Q. . . . . If he had gotten out of the truck .
> . . and fell, would that still, kind of, start
> this downward spiral.
>
> A. I have seen minimal trauma like that cause
> this scenario.  I have seen that pattern
> before, yes.
>
> Q. So if it was a fall, regardless of — I mean,
> he — there was a gravel parking lot, and he
> misstepped [sic], or if there was a hole, or
> what actually caused the trigger of the fall,
> wouldn't really — would it impact your
> decision?

A. My decision?

Q. Or your opinion?

A. About what really caused it?

Q. Yes, sir.

A. I mean, the mechanism of injury, you consider how much energy went into the fall, was it a fall from a height, was it just a stumble, was it a big impact? Some of that does, sort of, factor into does this all make sense with the pattern that I have seen before with, like, hundreds of other patients? So it does, kind of, factor into it. And I think that in his knee, with end stage bone on bone arthritis, it would not take very much at all to, kind of, tip him over the edge.

Findings of fact 25 and 26 are also supported by the testimony of Dr. Dean.

Q. Dr. Dean, you first saw [Plaintiff] for left knee pain on December 14th, 2011, is that correct?

A. (The witness reviews notes.) Yes.

. . . .

Q. The next time [Plaintiff] saw you was January 6th of 2012?

A. (The witness reviews notes.) Yes.

Q. Excuse me. What complaints did [Plaintiff] have when you saw him on January 6th?

A. (The witness reviews notes.) On January 6th, he had reasonable relief from the left knee injection performed in December of 2011, but it was starting to wear off.

. . . .

Q. . . . What recommendations for treatment did you make regarding [Plaintiff's] left knee at that time?

A. On the 6th, I thought his left knee was improved with an injection. He did have pretty severe arthritis. I thought he might need a knee replacement in the future. I refilled his Vicodin, which is a pain medicine, and I was going to see him back in six months.

. . . .

Q. And what was your plan at that appointment for treating [Plaintiff]?

A. Left knee replacement.

Q. And in fact, you performed a left knee replacement on March 13th, 2012, is that correct?

A. Yes.

. . . .

Q. Dr. Dean, approximately how many knee replacements do you do in a given year? A ballpark estimate is fine.

A. Probably 50 to 100.

Q. And in your experience, does a total knee replacement last the lifetime of the recipient?

A. No.

Q. How long does it typically last?

A. Depending on the age and activity level and weight of the patient, maybe 10 year [sic].

Q. And when a total knee replacement wears out, what's the recommended method for treating that?

A. Typically, it has to be revised, based on the reason that it has worn out.

Dr. Dean's testimony also supports findings of fact 25 and 26 in that it details the history of his treatment of Plaintiff's knee and Dr. Dean's accompanying diagnoses and medical recommendations. Furthermore, Dr. Dean's testimony that Plaintiff's left knee replacement was not a permanent solution and that his left knee issues would in all likelihood need to be addressed again in approximately 10 years supports finding of fact 26 by showing that further future medical treatment for Plaintiff's left knee condition will be necessary.

Defendants next argue that Dr. Dean's stated opinions concerning Plaintiff's left knee injury were based solely upon speculation and conjecture. In making this argument, Defendants point to the following exchange in his deposition:

Q. Dr. Dean, I would like to ask that you consider the following assumption. Assuming that prior to October 4th, 2011 [Plaintiff] was asymptomatic with regards to his left knee, and that on October 4th, 2011 [Plaintiff] stepped into a hole climbing out of the cab of his semi truck causing him to fall, and thereafter he had swelling, pain, and grinding — reports of a grinding sensation and a feeling of instability in his left knee. Assuming those facts, in your opinion, to a reasonable degree of medical certainty, did the event of October 4th, 2011 aggravate or accelerate the condition in [Plaintiff's] left knee for which you operated on him on March 13th, 2012?

> [Defendants' counsel]: Objection.    You
> can go ahead.

> A. Yes.    And I think that was stated in the
> chart.

Defendants assert that this portion of his testimony was premised upon the following three assumptions:  (1) that Plaintiff was asymptomatic prior to 4 October 2011; (2) that Plaintiff stepped into a hole when he exited his tractor trailer and fell as a result of doing so; and (3) that Plaintiff had swelling, pain, and a grinding sensation as a result of the fall.  Defendants also contend that this testimony served as the sole basis for Dr. Dean's opinion on causation and, therefore, if any of these assumptions are unsupported by competent evidence, then Dr. Dean's testimony is insufficient to establish a causal connection between Plaintiff's injury and the 4 October 2011 accident.  We reject Defendants' argument.

In finding of fact 7 (a finding Defendants have not challenged), the Commission determined that when Plaintiff's "left foot hit the ground, it unexpectedly landed in a hole or on some loose gravel or sand, and plaintiff's left knee twisted."  In addition, finding of fact 8 — also unchallenged by Defendants — states that "Plaintiff felt immediate pain in both of his knees upon the occurrence of this incident."

Even assuming the portion of the hypothetical question premised on Plaintiff having been asymptomatic prior to the 4

October 2011 incident was not supported by competent evidence, we do not believe that this renders Dr. Dean's ensuing testimony incompetent on the causation issue. It is well established that "[a] hypothetical question need only present sufficient facts to allow the witness to express an intelligent and safe opinion. It [is] not incumbent on the plaintiff to include in his hypothetical questions all the evidence bearing upon the fact to be proved; the defendants ha[ve] the right to present other phases of the evidence in counter-hypothetical questions." *Robinson v. J. P. Stevens & Co.*, 57 N.C. App. 619, 622-23, 292 S.E.2d 144, 146 (1982) (internal citations, quotation marks, and brackets omitted).

During his cross-examination of Dr. Dean, Defendants' counsel did, in fact, pose a counter-hypothetical question:

> Q. And then if there — so if there was evidence to the contrary, if for example, there was a prior exam that showed bone on bone or if there was a prior diagnosis of end stage arthritis with associated pain, then that would be evidence that the fall didn't cause [Plaintiff's injury]?
>
> A. Again, it just — and I think I put this in the note that it's kind of like the fall, sort of, didn't necessarily cause the arthritis, but it sent him on the — it was the straw that broke the camel's back. It sent him on the spiraling path downward, you know, as far as the — I have just seen that — I have seen that pattern before.

On redirect examination, Dr. Dean then testified as follows:

> Q. You — when [Defendants' counsel] was questioning you, we've talked about this, kind

of, the downward spiral and the trigger event for — or to, kind of, start somebody on that spiral. And I think you — I don't want to put words in your mouth, but I think you indicated that with the arthritis that [Plaintiff] had that it wouldn't take much to, kind of, start him on that spiral downward. If he had gotten out of the truck — regardless of whether there was a hole that he stepped in or not, but he got out of the truck, lost his balance, and fell, would that still, kind of, start this downward spiral?

A. I have seen minimal trauma like that cause this scenario. I have seen that pattern before, yes.

We are satisfied that — taken as a whole — Dr. Dean's opinion testimony was sufficient to establish causation. As such, the Commission was entitled to rely upon his testimony that Plaintiff's left knee injury was causally related to his 4 October 2011 accident.

**B. *Post Hoc, Ergo Propter Hoc***

Defendants also argue that Dr. Dean based his opinion on the *post hoc, ergo propter hoc* logical fallacy. We disagree.

> The maxim "*post hoc, ergo propter hoc*," denotes the fallacy of confusing sequence with consequence, and assumes a false connection between causation and temporal sequence. As such, this Court has treated the maxim as inconclusive as to proximate cause. . . . In a case where the threshold question is the cause of a controversial medical condition, the maxim of "*post hoc, ergo propter hoc*," is not competent evidence of causation.

*Young v. Hickory Bus. Furn.*, 353 N.C. 227, 232, 538 S.E.2d 912, 916 (2000) (internal citations, quotation marks, and ellipses omitted).

Defendants' argument on this issue is based on the following portion of Dr. Dean's testimony:

> Q: So basically, [the pain] wasn't there on day one, he alleges to have the injury on day two, on day three he has pain. So because it wasn't there before and is there now, that's how you identify the injury as being the cause?
>
> A: As, I think I called it, an exacerbating factor, yes.

However, Dr. Dean also testified as follows:

> Q. And the, I guess, objective ability to view the joint and see if it's bone on bone or if there is actual cushion there that could work?
>
> A. Yeah. It's really just based on his — what he tells me and then objectively what the knee is telling me. . . .
>
> . . . .
>
> Q. And then if there — so if there was evidence to the contrary, if for example, there was a prior exam that showed bone on bone or if there was a prior diagnosis of end stage arthritis with associated pain, then that would be evidence that the fall didn't cause it?
>
> A. Again, it just — and I think I put this in the note that it's kind of like the fall, sort of, didn't necessarily cause the arthritis, but it sent him on the — it was the straw that broke the camel's back. It sent him on the spiraling path downward, you know, as far as the — I have just seen that — I have seen that pattern before.

. . . .

Q. So the decision that that's the straw that breaks the camel's back, is because he's telling you that's when it started getting worse?

A. Yes.

. . . .

Q. . . . If he had gotten out of the truck . . . and fell, would that still, kind of, start this downward spiral.

A. I have seen minimal trauma like that cause this scenario. I have seen that pattern before, yes.

Q. So if it was a fall, regardless of — I mean, he — there was a gravel parking lot, and he misstepped [sic], or if there was a hole, or what actually caused the trigger of the fall, wouldn't really — would it impact your decision?

A. My decision?

Q. Or your opinion?

A. About what really caused it?

Q. Yes, sir.

A. I mean, the mechanism of injury, you consider how much energy went into the fall, was it a fall from a height, was it just a stumble, was it a big impact? Some of that does, sort of, factor into does this all make sense with the pattern that I have seen before with, like, hundreds of other patients? So it does, kind of, factor into it. And I think that in his knee, with end stage bone on bone arthritis, it would not take very much at all to, kind of, tip him over the edge.

We are satisfied that Dr. Dean's determination that a causal connection existed between the 4 October 2011 accident and Plaintiff's left knee injury was based on more than *post hoc, ergo propter hoc* reasoning. We have held that where a medical expert relies upon something more than mere temporal sequence, a *post hoc, ergo propter hoc* issue does not exist. *See Legette v. Scotland Mem'l Hosp.*, 181 N.C. App. 437, 456, 640 S.E.2d 744, 756 (2007) ("[Doctor's] opinion testimony was not based solely on the notion of *post hoc ergo propter hoc*. [Doctor] also testified that Plaintiff's description of the accident was consistent with a trauma of the type that would be associated with the development of lymphedema in someone with Plaintiff's medical history."), *appeal dismissed and disc. review denied*, 362 N.C. 177, 658 S.E.2d 273 (2008); *see also Carr*, 218 N.C. App. at 156, 720 S.E.2d at 874 ("[Doctor's] opinion, however, was based on more than merely the sequence of events. In his deposition, [Doctor] stated that although 'a lot of it is based on timing,' his opinion was based on the mechanism of injury as well as the temporal relationship between the incident and symptoms.").

In the present case, Dr. Dean relied on Plaintiff's description of the accident and his objective diagnosis of the injury based upon his examination of "hundreds of other patients" in reaching his opinion to a reasonable degree of medical certainty that Plaintiff's left knee injury was causally related to his 4

October 2011 accident. Therefore, we reject Defendants' contention that Dr. Dean relied solely on *post hoc, ergo propter hoc* reasoning in his opinion regarding causation.

## Conclusion

For the reasons stated above, the Commission's Opinion and Award is affirmed.

AFFIRMED.

Judges ELMORE and STEPHENS concur.

Report per Rule 30(e).